# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00837-SCT

*JAMES BRADLEY BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2006 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | VIRGINIA LYNN WATKINS |
| | WILLIAM R. LABARRE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/02/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     In this deliberate-design murder case, the Defendant claims the trial court committed reversible error by improperly admitting evidence and prohibiting questioning regarding a witness's informant status.  The defendant also claims that the evidence was legally insufficient to support his conviction.  Finding no reversible error, we affirm the circuit court's disposition.

**STATEMENT OF FACTS AND PROCEEDINGS**

¶2.     In the early morning hours of July 25, 2004, Jackson, Mississippi, firefighters were responding to a 911 report of a business fire on Terry Road, when they were directed by an unidentified motorist to look behind the Unique Hair Salon. There, they found an automobile engulfed in flames and the burning body of a man later identified as Edward Lee Nichols ("Nichols"). An autopsy revealed that Nichols had died of blunt force trauma to the back of the head.

¶3.     While investigating the crime scene, Detectives Amos Clinton and Eric Smith noticed a pathway through the woods to the back of a residence on Shiloh Drive, where they found a gas can and partially burned rags. They also noted that the pathway continued from the residence to the Rebelwood Apartments.[1]

¶4.     The police were without suspects until Shanta Payne came forward and identified James Bradley Brown as the killer. She stated that around 4:30 a.m. on July 25, Brown knocked on her Rebelwood apartment door and told her that he had killed someone. Payne also identified another resident of Rebelwood Apartments, Rasheeda Newton, as a potential witness. The police followed up by obtaining two statements from Newton, one in August 2004 and another in January 2005. Newton would later testify at trial that, although her August statement was factually accurate, she purposely failed to inform police that Brown had confessed to her he killed Nichols because, at the time, she was in love with Brown.

---

[1]For clarification of the layout of the area, Detective Clinton testified that there is "a beauty shop, which is on Terry Road. Directly behind the beauty shop is Shiloh Drive, and directly behind Shiloh Drive is Rebelwood Apartments. It is pretty much at a straight angle. I mean they're directly behind one another."

2

Newton testified that, in an effort to clear her conscience, she returned to the police station two weeks before Brown's trial and signed another statement specifying that Brown had knocked on her door around 4:30 a.m. on July 25, 2004. Newton stated that Brown was "acting all crazy," and that he had said he "got into it" with Edward Nichols, and he had told her "the boy was dead." She also testified that when she told Brown she did not believe he killed Nichols, he left her apartment and returned with his sister, Shannon Brown, who "told [Newton] that [Brown] wasn't lying; that it was all true."

¶5.     During the investigation, police traced the 911 call to a cell phone registered to James Butler, who told police he was the driver of the car that intercepted and directed firefighters to the blaze behind the Unique Hair Salon. Butler testified he saw James Brown running toward the Rebelwood Apartments between 4:00 and 4:30 a.m. on the morning in question, and that the day after the murder, Brown confessed to him that he "took about a grand off [Nichols]" and hit him. Butler further testified that Brown told him he had burned the car to get rid of his fingerprints at the crime scene.

¶6.     The trial court allowed the State to introduce into evidence a letter Butler testified Brown wrote him while the two were in jail together.[2] According to Butler, the letter was delivered to him by his cellmate, who was a prison trustee assigned to work in the barber shop. Butler claimed that, while Brown was getting a haircut, he asked the trustee to deliver the letter to his cellmate. Butler further testified that, sometime after he received the letter,

---

[2]Although the record does not explicitly state why Butler was in jail at this time, his incarceration is unrelated to the events at issue in this case.

3

Brown acknowledged to him that he authored the letter, which addressed Butler's testimony about the murder.

¶7.     The defense called Markia Felder, who testified that Brown was with her on the night in question. Joseph Nix, a passenger in James Butler's car on July 25, also testified for the defense and disputed Butler's identification of Brown as the person running from the crime scene to Rebelwood Apartments. Brown's sister, Shannon Brown, testified that she never went to Rasheeda Newton's apartment the night of July 25. Brown testified on his own behalf, after which the defense rested.

¶8.     The jury found Brown guilty of deliberate-design murder, and the trial judge sentenced him to life imprisonment. Following post-trial motions, Brown timely perfected this appeal.

**ANALYSIS**

¶9.     Brown presents for our review the following assignments of error: (1) the trial court erred in its denial of full impeachment of James Butler; (2) the trial court erred in admitting a letter purportedly from James Brown; (3) the trial court erred in admitting testimony of a statement allegedly made by James Brown; (4) the trial court abused its discretion in admitting a gas tank found near the scene; and (5) the evidence was insufficient to support the jury verdict.

¶10.     When reviewing evidentiary rulings made by the trial court, this Court employs an abuse of discretion standard. *Peterson v. State*, 671 So. 2d 647, 655 (Miss. 1996) (citing *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991)). This Court must first determine if the proper legal standards were applied. *Id.*

4

at 655-56 (citing *Baine,* 606 So. 2d at 1078). Where error involves the admission or exclusion of evidence, this Court "will not reverse unless the error adversely affects a substantial right of a party." *Ladnier v. State*, 878 So. 2d 926, 933 (Miss. 2004) (quoting *Whitten v. Cox*, 799 So. 2d 1, 13 (Miss. 2000)).

*Evidence of a plea agreement*

¶11. Prior to addressing the issues presented on appeal, we address Brown's assertion that evidence of a plea deal Butler received after the conclusion of Brown's trial should be considered at this stage of review. However, this evidence will not be considered on appeal per our Order dated January 17, 2007, in which this Court refused to allow the appellant's motion to supplement the record with that evidence. Brown chose to ignore such ruling and referenced this improper material throughout his brief. The State has moved to strike that information.

¶12. "This Court will not consider matters that do not appear in the record, and it must confine its review to what appears in the record." *Pulphus v. State*, 782 So. 2d 1220, 1224 (Miss. 2001) (citing *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995)). This Court has stated, "we have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions." *Robinson*, 662 So. 2d at 1104. Asserted error grounded in facts outside the record may not be presented on direct appeal, but is more appropriately presented in a petition for post-conviction relief. We grant the State's motion to strike, and we must disregard all improperly-included evidence in making today's findings.

*Denial of full impeachment*

¶13. During discovery, Brown learned that Butler was an informant for the Hinds County Sheriff's Department. In an effort to show Butler's bias toward law enforcement, Brown attempted to introduce evidence of Butler's relationship as an informant. The trial judge refused to allow the evidence, holding that the Sheriff's Department was totally different from the Jackson Police and Fire Departments, and that Butler's relationship with the Sheriff's Department did not affect his credibility as a witness. On appeal, Brown asserts that he was denied his right to fully impeach Butler on his relationship with the Hinds County Sheriff's Department.

¶14. Brown cites ***Banks v. Dretke***, 540 U.S. 668, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004), for the proposition that his conviction should be remanded because the jurors were unaware that Butler was a confidential informant for the Hinds County Sheriff's Department. However, that case is hardly instructive here. In ***Banks***, the State actively concealed the witness's paid informant status and allowed that witness to testify untruthfully on the stand without correction. The United States Supreme Court held that where the State conceals impeaching material in its possession, it is incumbent on the State to set the record straight. *Id.* at 675-76. Here, no impeaching material was concealed – the defense was fully aware that Butler had cooperated with the Hinds County Sheriff's Department well in advance of trial. Moreover, we find James Butler's status as a confidential informant to the Hinds County Sheriff's Department irrelevant to this case. Such information does not have "the tendency to make the existence of any fact *that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence. M.R.E. 401

6

(emphasis added). Because the Hinds County Sheriff's Department had no involvement with the case before us, Brown's assertion is unfounded. Rule 402 of the Rules of Evidence specifically provides that "[e]vidence which is not relevant is not admissible." *See Johnson v. Fargo*, 604 So. 2d 306, 309 (Miss. 1992) ("A trial judge has the discretion to exclude irrelevant evidence"). Accordingly, the trial court did not abuse its discretion by excluding evidence of James Butler's relationship with the Hinds County Sheriff's Department, as it was not the investigating law enforcement agency in Brown's case.

*Admission of letter without authentication*

¶15. Brown asserts that the trial court committed error in admitting the letter Brown allegedly wrote to Butler while in prison. Specifically, Brown claims that the letter presented at trial was not properly authenticated, was not the original, and that a chain of custody between Brown and Butler had not been established.

¶16. Rule 901 of the Mississippi Rules of Evidence governs the authentication of documents in our trial courts. Specifically, subsection (a) of that Rule states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Rule goes on to explain that a written document may be authenticated by a lay witness familiar with handwriting not acquired for purposes of litigation, or by an expert by comparing specimens that have been previously authenticated. *See* M.R.E. 901(b)(2), (3). Rule 901 further provides that testimony of a witness with knowledge is sufficient authentication that a matter is what it is claimed to be. M.R.E. 901(b)(1).

¶17. Butler testified that, after the trustee delivered the letter from Brown to him, Brown acknowledged that he wrote the letter. Accordingly, the letter was sufficiently authenticated under Rule 901(b)(1). The trial court did not err in overruling the defendant's objection to introduction of the letter on the basis of authenticity.

¶18. Under Mississippi Rule of Evidence 1003, a duplicate is admissible to the same extent as the original unless a genuine question is raised as to the authenticity of the original, or if in the circumstances it would be unfair to admit the duplicate in lieu of the original. Butler stated on the stand that the letter presented in court was an exact duplicate of the original, which was in his attorney's possession during trial. The defense offered no reason why it would be unfair to admit the duplicate in lieu of the original, and the letter was sufficiently authenticated as noted above. Therefore, the trial court properly admitted the letter.

¶19. Brown also argued that a chain of custody was never established to connect him with the letter. "Whether a chain of custody has been properly established is left to the discretion of the trial court." *Brown v. State*, 682 So. 2d 340, 350 (Miss. 1996) (citing *Nalls v. State*, 651 So. 2d 1074 (Miss. 1995); *Wells v. State*, 604 So. 2d 271 (Miss. 1992)). Although the trial judge did not explicitly overrule the chain of custody objection made by the defense, the judge did acknowledge that in light of the defendant's admission that he wrote the letter and because Butler testified that the trustee specifically noted that the letter came from Brown, the letter was admissible. We agree with the trial court's disposition regarding chain of custody and find that the trial court's discretion was not abused in accepting witness testimony that the letter was what Butler claimed it to be. Thus, this assignment of error is without merit.

*Admission of statement made to police*

¶20.    After being arrested and advised of his Miranda rights, Brown invoked his right to remain silent.  However, according to Detective Clinton's testimony, while the detectives were handling procedural matters related to his arrest, Brown spontaneously asked Detectives Clinton and Smith how they could help him "if he was the individual that was responsible for Edward Nichols's death."  Brown's attorney objected to the introduction of that statement on the basis that it would be an indirect comment on the defendant's right to remain silent.  In a precautionary move, the trial judge required the State to proffer Detective Clinton's testimony outside of the jury's presence to ensure the defendant's rights were protected.  In declaring the testimony probative of the defendant's guilty conscience, the trial judge warned the parties not to mention that the defendant "exercised his right to remain silent or even any partial invocation of his Miranda rights."  On appeal, Brown asserts that the testimony of Detective Clinton makes clear that there was no further statement by Brown, otherwise, the jury would have heard testimony of it.  Therefore, Brown asserts the detective's testimony was a "back door effort to place before the jury the fact that Mr. Brown remained silent."

¶21.    In a case similar to this one, during the booking process on a kidnaping charge, the defendant stated, "I want to know what happens to little girl snatchers in this town." ***Hersick v. State***, 904 So. 2d 116, 126-27 (Miss. 2004).  This Court found no abuse of discretion where the trial court ruled the statement was spontaneous and admissible.  Indeed, this Court has determined that volunteered and unprompted statements are admissible, so long as they are not the result of questioning by officers after a defendant has exercised the right to remain silent.  *See **Stallworth v. State***, 797 So. 2d 905, 912 (Miss. 2001).  We find no abuse of

9

discretion in the trial court's decision to allow Detective Clinton to testify to Brown's spontaneous, uncoerced statement, and we applaud the trial judge's efforts to assure that the State made no reference to, or comment about, Brown's right to remain silent. For the reasons stated, this assignment of error is without merit.

*Admission of gas tank found at residence*

¶22. Brown next asserts that the trial court erred by admitting into evidence the gas tank found in the vicinity of the crime scene, as it was not relevant. Additionally, Brown claims that the trial court failed to weigh the gas tank's probative value against the danger of unfair prejudice.

¶23. With few exceptions, this Court has enforced the rule that provides, where no objection is made at trial to an asserted error, a party is procedurally barred from asserting the error on appeal. *Fleming v. State*, 604 So. 2d 280, 294 (Miss. 1992) (holding the absence of timely objection causes the defendant to be procedurally barred from asserting the alleged error on appeal). The defense properly preserved, by motion in limine and objection during trial, its protest to the introduction of the gas tank based on the fact that it was evidence of arson, an uncharged crime. The trial court overruled the motion in limine and Brown's continuing objection on the basis that the gas tank was probative of the defendant's concealment of the murder. Before admitting the gas tank into evidence, the judge asked the defense for any further objections. The defense then objected based on chain of custody, which the trial judge overruled. The defense never objected to introduction of the gas tank on the basis that the trial court did not perform a Rule 403 balancing inquiry.

10

¶24.   It is incumbent on the party asserting error to make a contemporaneous objection and obtain a ruling in order to preserve the objection.  *Billiot v. State*, 454 So. 2d 445, 456 (Miss. 1984), *cert. denied*, 469 U.S. 1230, 105 S. Ct. 1232, 84 L. Ed. 2d 369, *reh. denied*, 470 U.S. 1089, 105 S. Ct. 1858, 85 L. Ed. 2d 154 (1985).  Thus, the defense is now procedurally barred from arguing on appeal that the trial court committed reversible error by not performing a Rule 403 balancing analysis.

*Sufficiency of the evidence*

¶25.   Brown claims the evidence presented by the State was insufficient to support a conviction.  This Court's standard of review for sufficiency of the evidence has been established as follows:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); see also *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004).  However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

*Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶26.   When reviewing a case for sufficiency of the evidence, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

11

¶27. Brown was indicted and convicted under Miss. Code Ann. Section 97-3-19(1)(a) (Rev. 2006). The statutory definition of deliberate-design murder is as follows: "The killing of a human being without the authority of law by any means or in any manner shall be murder. . .when done with deliberate design to effect the death of the person killed, or of any human being." Miss. Code Ann. § 97-3-19(1)(a) (Rev 2006). This Court has enumerated the elements the prosecution is required to prove beyond a reasonable doubt as: (1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death. *Dilworth v. State*, 909 So. 2d 731, 736 (Miss. 2005). Brown asserts that the State failed to adduce evidence sufficient to satisfy the deliberate-design element as required by law.

¶28. "[D]eliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995) (quoting *Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987)). This Court has acknowledged that deliberate-design connotes an intent to kill and may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury. *Wilson v. State*, 936 So. 2d 357, 364 (Miss. 2006) (internal citations omitted). In *Wilson*, this Court found sufficient evidence to convict the defendant of deliberate-design murder where the victim had been beaten and repeatedly stabbed by the defendant. This Court also has recognized that shooting a victim with a gun constituted deliberate-design murder. *See Jones v. State*, 710 So. 2d 870 (Miss. 1998); *Hawthorne v. State*, 835 So. 2d 14 (Miss. 2003).

12

¶29.    Nichols's cause of death was officially noted as "blunt force trauma" to the head.  Dr. Steven Hayne, a forensic pathologist, testified that, based on the autopsy and his report prepared incident thereto, Nichols sustained multiple blows to the head, chest, abdomen and back.  Dr. Hayne further testified that the amount of force necessary to produce the victim's injuries was unlikely to have been inflicted without an object and most likely was made by contact with a blunt object.  Indeed, James Butler alleged that Brown told him the day after the murder that he had hit Nichols.  Butler testified, "He never told me what he hit him with or what did he do or did he shoot him or anything.  He just said he had hit him."  Rasheeda Newton likewise testified that Brown told her he had "got[ten] into it" with Nichols and that the boy was dead.  Thus, based on the testimony and evidence presented, we find that the State produced enough evidence for a jury to find a "deliberate design" beyond a reasonable doubt.

¶30.    As to the remaining elements, the prosecution put forth corroborating testimony of three witnesses that Brown had confessed to killing Edward Lee Nichols.  Additionally, the State presented a witness who identified Brown running from the direction of the crime scene toward Rebelwood Apartments and who later received correspondence from Brown regarding the crime.  Moreover, the State introduced the spontaneous statement of Brown to Detectives Clinton and Smith regarding whether they could do anything for him if he killed the victim.  A competent jury could have determined that, on the basis of all the evidence, James Bradley Brown was the person responsible for Nichols's death.  Therefore, this issue is without merit.

13

**CONCLUSION**

¶31.    For the reasons stated herein, we find that the State proved all the elements of deliberate-design murder by legally sufficient evidence.  Moreover, we find that the trial court did not abuse its discretion in the admission and exclusion of evidence in this case.  Therefore, finding no reversible error, we affirm James Bradley Brown's murder conviction and sentence.

¶32.    **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR.  DIAZ, P.J., CONCURS IN RESULT ONLY.**