IRVING, J.,
 

 for the Court.
 

 ¶ 1. John Edward Jones was convicted by a jury in the Itawamba County Circuit Court of possession of cocaine with intent to sell and sentenced to thirty years in the custody of the Mississippi Department of Corrections, with fifteen years suspended and five years of post-release supervision. Aggrieved, Jones appeals and asserts: (1) that the trial court erred in denying his motion for a mistrial, (2) that the trial court erred in denying his request for a continuance, and (3) that there is insufficient evidence to support his conviction.
 
 [1]
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Jones was arrested at his home on September -25, 2000, after crack cocaine was discovered in his bedroom. Thereafter, he was indicted for possession of more than ten grams of cocaine with intent to sell, transfer, or distribute. In October 2006, Jones went to trial and was convicted as charged.
 
 [2]
 

 ¶ 4. Herbert Partlow, a bail enforcement agent, testified that he and another agent went to Jones’s residence in Fulton, Mississippi, on the morning of September 25 to arrest Jones on a bench warrant that had been issued against him for failing to appear on an open-container charge. Partlow recalled that he knocked on the door and then looked inside of the residence and saw Jones inside. He stated that someone instructed him to come in.
 
 [3]
 

 ¶ 5. According to Partlow, when he entered the residence he noticed Jones standing in a hallway, but he noted that Jones quickly left his sight. Partlow testified that he then began “sweeping through the house” in an effort to find Jones. Partlow explained that while looking for Jones, he was approached by a man who asked him what he was doing. Partlow testified that he informed the man that he was looking for Jones. According to Part-low, the man told him that he had just seen Jones standing in the hallway. Part-low stated that he then opened the door to a bedroom and entered. He explained that upon entry into the bedroom, he noticed a rock-like substance on a piece of tin that was on the bed.
 
 [4]
 
 Partlow testified that he then left the room and that as he was doing so, he witnessed Jones exit another bedroom. According to Partlow, it was at this point that he arrested Jones. He also stated that he called the Fulton Police Department and apprised the officers there of his findings. Officers arrived at the scene shortly thereafter, and Part-low turned the scene over to them. Part-low stated that he left Jones in the custody of the Fulton Police Department.
 

 ¶ 6. At some point, the Itawamba County Sheriffs Department was also called to
 
 *60
 
 the scene. David Sheffield, former chief investigator with the sheriffs department, learned that Mattie Jones, Jones’s mother, owned the residence and that Jones lived there with her and his brother, Richard. Mattie stated that she did not know which of her sons lived in the bedroom where the cocaine was found. According to Investigator Sheffield, Mattie signed a consent to search form shortly thereafter.
 

 ¶ 7. Investigator Sheffield testified that a search of the room where the cocaine was found uncovered several documents related to Jones in a dresser drawer. Investigator Sheffield also testified that he saw a pair of shoes next to the bed and that he asked Jones if they belonged to him. Investigator Sheffield stated that Jones initially did not confirm or deny that the shoes belonged to him, but later asked for the shoes to wear to jail. Jones also provided a written statement to police wherein he admitted ownership of the cocaine. Specifically, he stated that he “got the crack cocaine from David Carson on Front Street, [in] Tupelo, Mississippi. He fronted it to me to sell. I was going to have to give him $400.00 for the crack when I sold it.”
 
 [5]
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 8. In his first issue, Jones asserts that he was prejudiced when he was brought before the jury in waist restraints and handcuffs, and, that as a result, the trial court erred in denying his motion for a mistrial. At the beginning of the trial, Jones’s attorney moved for a mistrial on this basis. In
 
 Blocker v. State,
 
 809 So.2d 640, 643(¶ 11) (Miss.2002) (citing
 
 Bass v. State,
 
 597 So.2d 182, 191 (Miss.1992)), the Mississippi Supreme Court held that “[t]he granting of a motion for a mistrial is within the sound discretion of the trial court.” The
 
 Blocker
 
 court also held that “[flailure of a trial court to grant a mistrial will not be overturned on appeal without a showing that the judge abused his or her discretion.”
 
 Id.
 

 ¶ 9. We note at the outset that Jones was brought before the jury venire — not the jury — in waist restraints and handcuffs. Nevertheless, we recognize that the jury is selected from members of the veni-re. We further note that the handcuffs were immediately removed after it was brought to the attention of the trial judge that Jones was handcuffed.
 

 ¶ 10. It is clear in this state that:
 

 It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape
 
 or in order
 
 to protect others
 
 from
 
 an attack by the prisoner. Whether that ought to be done is in the discretion of the court, based upon reasonable grounds for apprehension. But, if this right of the accused is violated, it may be ground for the reversal of a judgment of conviction.
 

 Rush v. State, 301
 
 So.2d 297, 300 (Miss. 1974) (citing
 
 Marion v. Commonwealth,
 
 269 Ky. 729, 108 S.W.2d 721 (1937)). Nevertheless, our courts have also held that the failure to remove handcuffs and the like for a short period of time due to oversight and which is not found to be prejudicial to the accused is not grounds for reversal.
 
 Id.; see also Spicer v. State,
 
 921 So.2d 292, 304(¶ 19) (Miss.2006);
 
 Doss v. State,
 
 882 So.2d 176, 184(¶ 14) (Miss.
 
 *61
 
 2004);
 
 Payton v. State,
 
 897 So.2d 921, 931-33 (¶¶ 7-18) (Miss.2003).
 

 ¶ 11. In this case, following a bench conference outside of the presence of the venire, the trial judge overruled the motion for a mistrial and stated that she was:
 

 going to voir dire the jury [herself] extensively on the issue of him being in wrist cuffs and what prejudice, if any, that may have caused any juror. If necessary, I will conduct individual voir dire in chambers to make an earnest effort to ascertain as to whether or not any one of these jurors would be biased or prejudiced to cause them to believe that they would' decide this case any differently based upon the display of the removal of the cuffs in the courtroom.
 

 Thereafter, prior to the trial judge’s voir dire of the jury venire, Jones’s attorney conducted voir dire, specifically on the issue of Jones being brought before the jury venire in handcuffs. During his row by row examination of the prospective jurors, several members of the venire admitted that they had had a reaction to seeing Jones handcuffed:
 

 Q. Now, on the first row I want to focus, and I’m going to ask each of you on each row to respond in the same manner. Everybody in the first row, when you saw him brought in in cuffs, was your first thought “there is a criminal”? Is that your first thought? I see — I see one yes here. If that was your first thought, would you raise your hand in the first row, please.
 

 A. (Juror indicates by raising hand.)
 

 Q. Okay. Just one lady. I’m sorry. I don’t have my list with me and I don’t know you. Is that Ms. Sen-ter?
 

 A. Yes.
 

 Q. Okay. Now, Ms. Senter, as the district attorney said, this is a balancing case, and he’s supposed to be presumed innocent. When you saw him brought in, did you not tip a little bit?
 

 A. I did.
 

 Q. Thank you, Ms. Senter.
 

 [[Image here]]
 

 Q. Could I have both of you stand, please. Did anyone else in that row raise your hand? Okay. Now, first, Ms. Bates, did that tip the balance of the scales just a little bit in your mind?
 

 A. It made me wonder what he had done.
 

 Q. Okay. And then the same question to you, Ms. Standifer.
 

 A. Yes. It made me feel that he must be guilty. They brought him in in cuffs.
 

 Q. Okay.
 

 A. When they uncuffed him, it frightened me because I didn’t know what the case was about.
 

 Q. Thank both of you. Anybody else in that row? Y’all may be seated. Okay. In the fourth row anybody? Show of hands.
 

 A. ([Prospective] [j]uror indicates by raising hand.)
 

 Q. Okay. That’s Ms. — let me see. Is that Ms. Holiday? Okay. Could you stand, please. And when you first saw him in cuffs, did that make you feel as far as the weight of justice go[es] that it tipped a little bit towards him being guilty?
 

 A. Yes, sir.
 

 Q. It did. And that’s Ms. Chenelle Holiday. Okay. Thank you, ma’am. Anybody else in that row? The next row anybody? No show of hands on the next row. Okay. The
 
 *62
 
 row after that, a show of hands, anybody that it tipped the weight.
 

 A. ([Prospective] [j]uror indicates by raising hand.)
 

 Q. And that’s Ms.—
 

 A. Gassaway.
 

 Q. —Gassaway?
 

 A. It made me wonder, you know — I know this is court and you’re proven innocent, but it made me wonder why they brought him in in handcuffs in the first place.
 

 Q. Okay.
 

 A. That’s what I thought.
 

 Q. And so in your mind, did that tip the weight for justice?
 

 A. Well, it just made it like, you know, wondering what did he do, why would they still have him in custody and bring him in in handcuffs.
 

 Q. Okay.
 

 A. And I think everybody would wonder that.
 

 Q. Thank you, Ms. Gassaway. Anybody else on that row? In the next row anybody? Okay. And then on the last row, Mr. McFerrin, did that influence you?
 

 A. (Inaudible.)
 

 Q. Okay. Thank you, sir.
 

 THE REPORTER: I need him to speak up.
 

 [ATTORNEY FOR DEFENDANT]: Mr. McFerrin said no, it did not influence him.
 

 ¶ 12. Then, the trial judge conducted the following examination:
 

 BY THE COURT: Could I ask jurors Ms. Senter, Bates, Standifer, Holiday, Gassaway to please stand. Now, if there’s someone else that responded to [Jones’s attorney’s] question when he was asking about row by row if you were affected by what you saw when the defendant was brought in in cuffs, if I’ve missed someone, it’s my intent to ask you this question, so please stand. My question to you would be this: Having responded that you were affected having seen the defendant in cuffs, can you tell me under your sworn oath that you can put that totally aside? You were candid and honest when you said this is how it first impressed me, but you’ve now heard other comments made during voir dire that this case is not about whether or not he was brought in [in] cuffs or not. This case is about the evidence that comes from the witnesses and you deciding this case based solely upon the evidence and nothing else, because this man is presumed innocent as he sits here. I’m telling you he’s innocent as he sits here, because you’ve heard no proof. Now, Ms. Senter, can you put aside your impression of when the defendant entered the courtroom and hear the case and make the decision based solely upon the evidence?
 

 A. Yes, ma’am, I can.
 

 Q. Is there any doubt in your mind as to whether or not you can do that?
 

 A. No.
 

 Q. I have plenty of jurors. If there’s any doubt, I’ll go to someone else.
 

 A. It just struck me for a moment when I saw him the way he was and wondered if he was really — I mean, I knew he was probably the defendant in this, and it just scared me.
 

 Q. Can you put that aside, your fright, your first impressions, and hear this case based solely upon the evidence?
 

 A. Yes, ma’am.
 

 Q. Thank you. Ms. Bates.
 

 A. I think I can, but I can’t say.
 

 Q. Some doubt in your mind whether or not you can do that?
 

 
 *63
 
 Yes. i>
 

 Is that what I’m hearing? <©
 

 Um-hmm. i>
 

 Thank you, Ms. Bates. Ms. Standi-fer. <©
 

 That was just my first impression. That was before you spoke and told what the defendant — what it was all about. That was just my first impression when I first seen [sic] him, but I can—
 

 Can you put whatever your first impression was aside?
 
 &
 

 Yes. Yes. <|
 

 Do you understand that the case is about what comes from this witness stand under oath, not about how he entered the courtroom? O’
 

 Yes. >
 

 Thank you. Ms. Holiday. <©
 

 Yes, I can. I can base my opinion upon the facts. i>
 

 Any question in your mind whether or not you can do that?
 
 &
 

 No question in my mind. 1>
 

 Thank you. Ms. Gassaway. .O
 

 Yes, ma’am, I know I can.
 

 You know you can? (D
 

 Yes. I know he’s innocent until they prove to me that he is guilty. >
 

 Thank you, Ms. Gassaway.
 
 tO
 

 Thank you. t>
 

 Now, for any other juror that’s on this panel, do you have any reluctance whatsoever on your personal ability to decide this case based solely upon the evidence and not one iota about how he entered the courtroom? If there’s any doubt, I have plenty of jurors. I just need you to stand and tell me “I just don’t know that I can put that aside.” It’s just that simple. Any-
 
 <0
 
 body that feels that they need to stand at this time?
 

 THE COURT: Thank you. Thank you very much.
 

 ¶ IB. The jury that was chosen did not include any of the prospective jurors that had expressed concern over seeing Jones in handcuffs. Nevertheless, the trial judge conducted a thorough examination in order to determine whether Jones was prejudiced as a result of being brought into the courtroom in handcuffs. Accordingly, we cannot find that the trial judge abused her discretion in refusing to grant Jones’s motion for a mistrial. This issue lacks merit.
 

 ¶ 14. Next, Jones asserts that the trial judge erred in denying his motion for a continuance and argues that by doing so he was denied effective assistance of counsel, due process, and the right to a fair trial. “The standard for review for a grant or denial of a motion for continuance is within the discretion of the trial court.”
 
 Shelton v. State,
 
 853 So.2d 1171, 1181 (¶ 35) (Miss.2003) (citing
 
 Smiley v. State,
 
 815 So.2d 1140, 1143-44 (¶ 14) (Miss.2002)).
 

 ¶ 15. Jones’s trial was held in October 2006 on the 2nd, 3rd, 4th, and 6th days. During his trial, Jones was represented by two attorneys, one of whom made an entry of appearance on October 2nd. The attorney who made an entry of appearance on October 2nd filed a motion for continuance the same day, wherein he argued that he had not had sufficient time to prepare for trial. The trial judge denied the motion. We note that Jones’s other attorney made an entry of appearance on February 2, 2003. Therefore, we cannot disagree with the trial judge that Jones had sufficient notice that the case had been set for trial. Accordingly, Jones has failed to show how he was prejudiced by the trial judge’s finding. There is no merit to this issue.
 

 
 *64
 
 ¶ 16. Finally, Jones contends that the record is not sufficient to support his conviction for possession of cocaine with intent to distribute. Our supreme court has consistently held that:
 

 When reviewing a challenge to the sufficiency of the evidence, [an appellate court] will reverse and render only if the facts and inferences “ ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,’.... ”
 
 Brown v. State,
 
 965 So.2d 1023, 1030 [ (¶ 25) ] (Miss.2007) (quoting
 
 Bush v. State,
 
 895 So.2d 836, 843 [ (¶ 16) ] (Miss.2005)). The evidence will be deemed sufficient if “ ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’.... ”
 
 Brown,
 
 965 So.2d at 1030 [ (¶ 25) ] quoting
 
 Bush,
 
 895 So.2d at 843 [ (¶ 16) ]. The relevant question is whether “ ‘any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”
 
 Brown,
 
 965 So.2d at 1030 quoting
 
 Bush,
 
 895 So.2d at 843 [ (¶ 16) ]. This Court considers the evidence in the light most favorable to the [S]tate.
 
 Bush,
 
 895 So.2d at 843 [ (¶ 16) ]. The [S]tate receives the benefit of all favorable inferences that may reasonably be drawn from the evidence.
 
 Wilson v. State,
 
 936 So.2d 357, 363 (Miss.2006) (citing
 
 Hawthorne v. State,
 
 835 So.2d 14, 22 (Miss.2003)).
 

 Hughes v. State,
 
 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008).
 

 ¶ 17. It is well settled in Mississippi jurisprudence that “intent may be established by circumstantial evidence.”
 
 Jackson v. State,
 
 580 So.2d 1217, 1219 (Miss.1991) (citing
 
 Hollingsworth v. State,
 
 392 So.2d 515, 517 (Miss.1981)). However, when determining whether the quantity of drugs alone is sufficient to infer intent to distribute, our appellate courts have held that in some instances it is and in some instances it is not.
 
 Id.
 
 Thus, we decide this issue on a case-by-case "basis. Further, it is well settled that:
 

 Proof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.
 

 Miller v. State,
 
 634 So.2d 127, 129 (Miss.1994) (quoting
 
 Stringfield v. State,
 
 588 So.2d 438, 440 (Miss.1991)).
 

 ¶ 18. Jones contends that the State failed to prove that he intended to sell cocaine and argues that the only evidence of his intent in this regard is his confession, which he argues must be corroborated by independent evidence. He cites
 
 Hodge v. State,
 
 823 So.2d 1162, 1166(¶ 12) (Miss.2002) (citing
 
 Cotton v. State,
 
 675 So.2d 308, 314 (Miss.1996)) wherein our supreme court held that “[w]e are mindful that a defendant’s confession that is not corroborated by independent evidence of the corpus delicti is insufficient to support a felony conviction.”
 

 ¶ 19. Jones admitted that he intended to sell the crack cocaine that was found in his bedroom. The record clearly establishes that sufficient evidence exists to support a finding that Jones constructively possessed the cocaine, as he admitted that the cocaine was found in his bedroom. Also, Jones admitted that he got the cocaine from Carson with the intent to sell it. As noted, in his written statement,
 
 *65
 
 Jones stated that: “I was going to give [Carson] $400.00 for the crack when I sold it.” Further, Jones stated that: “I was suppose[d] to meet him back on Front Street to pay him back the $400.00 on Friday. This is the second time I got crack cocaine from him. The first time I bought approx. $200.00 worth.” Moreover, the record clearly establishes that, in addition to Jones’s statement that he intended to sell the cocaine found in his residence, he had also bought and sold cocaine on at least one prior occasion. “Evidence of pri- or involvement in the drug trade is admissible to prove intent to distribute.”
 
 Holland v. State,
 
 656 So.2d 1192, 1196 (Miss.1995) (citing
 
 Jowers v. State,
 
 593 So.2d 46, 47 (Miss.1992)). Based on the facts set forth, we find that the jury could have reasonably concluded that Jones possessed the cocaine with the intent to distribute. Accordingly, we find that sufficient evidence exists for this Court to uphold Jones’s conviction and sentence for possession of cocaine with intent to distribute. This issue lacks merit.
 

 ¶ 20. THE JUDGMENT OF THE ITAWAMBA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAMBA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Although Jones frames this issue as one challenging the weight of the evidence, we conclude that he is really making a sufficiency argument. Thus, we will address it as such.
 

 [2]
 

 . The trial judge entered an order denying Jones’s motion for a new trial on November 30, 2006. Thereafter, on April 9, 2007, Jones filed a motion to reopen the time for appeal pursuant to Rule 4(h) of the Mississippi Rules of Appellate Procedure. Jones asserted that he had not received notice from the clerk within twenty-one days that his motion had been denied. The trial judge granted the motion.
 

 [3]
 

 . Partlow testified that he did not know if the voice was that of a male or female.
 

 [4]
 

 . Brandi Goodman with the Mississippi Crime Laboratory testified that 11.70 grams of cocaine was recovered from Jones’s residence.
 

 [5]
 

 . According to Investigator Sheffield, Jones initially stated that the cocaine was for personal use but later stated that he intended to sell it.