# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00592-COA

**LONNIE NALLS, JR. A/K/A LONNIE NALLS**             **APPELLANT**
**A/K/A LONNIE LEE NALLS**

**v.**

**STATE OF MISSISSIPPI**             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2021 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN TAYLOR COOK |
| | LONNIE NALLS JR. (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/02/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. A jury in the Washington County Circuit Court convicted Lonnie Nalls Jr. of attempted murder and possession of a firearm by a felon. The circuit court sentenced Nalls, as a violent habitual offender, to serve two consecutive terms of life without eligibility for parole in the Mississippi Department of Corrections (MDOC). After the circuit court denied his motion for judgment notwithstanding the verdict (JNOV) or a new trial, Nalls appealed. Finding no reversible error, we affirm.

## STATEMENT OF THE FACTS

¶2. In March 2019, Nalls and Lamarcus Ware were indicted for the attempted murder of Jeremy Jones. Nalls was also indicted for possession of a firearm by a felon and charged as a violent habitual offender.

¶3. Several months later, in September 2019, Ware pled guilty to aggravated assault and was sentenced accordingly.

¶4. Nalls' first trial in October 2020 resulted in a hung jury.[1] At Nalls' second trial, in April 2021, Brian Ledlow testified that on February 27, 2018, he was talking with Jones and some others on a residential street in Greenville when he noticed a gray Toyota at a corner. Ledlow testified that less than ten minutes later, he observed a gold Honda driving toward them. As he moved out of the street, gunshots came from the vehicle. According to Ledlow, Ware (whom he had known for about five years) was shooting from the front of the vehicle, and Nalls (whom Ledlow had known for more than ten years) was shooting from the back of the vehicle. Ledlow testified that Jones was hit by one of the bullets. According to Ledlow, he identified the shooters as Nalls and Ware to law enforcement that night. Ledlow testified that Nalls called him and Jones after the shooting and attempted to persuade them not to testify.

¶5. Similarly, Jones testified that he was talking to Ledlow and some others when he observed a vehicle's headlights turn off and approach them. Jones testified that Ware was

---

[1] Our supreme court has held that "[f]or an accused to stand trial again when the first trial resulted in a hung jury is not a violation of the double jeopardy clause." *Wilson v. State*, 574 So. 2d 1324, 1332 (Miss. 1990). Additionally, under circumstances such as these where there was a hung jury, "[s]ince a mistrial 'cannot stand in law,' *Black's Law Dictionary* at 903 (5th ed. 1979), it represents a nullity and stands as no bar to continued prosecution." *Pierre v. State*, 607 So. 2d 43, 48 (Miss. 1992).

shooting a handgun while driving the vehicle and that Nalls was shooting an assault rifle in the back seat. Jones explained that he was friends with Nalls and did not understand why Nalls had shot him. According to Jones, he was not able to provide a statement at the time, but about a month and a half after the shooting, he gave a statement and identified Nalls and Ware as the shooters.[2] Like Ledlow, Jones testified that Nalls attempted to persuade him not to testify.

¶6. Officer Gary David Galloway with the Greenville Police Department testified that he was on patrol when he received a call that shots had been fired. Initially, Officer Galloway said that Jones was lying on his back when he arrived at the scene, but he later testified that Jones was face down. According to Officer Galloway, he spoke with Jones at the scene, and Jones identified Nalls and Ware as the shooters and stated that Nalls had been driving the vehicle. Officer Galloway testified that Ledlow left the scene before he was able to speak with him. In his report, however, Officer Galloway stated that he identified a possible witness and spoke with him briefly. Additionally, in his prior sworn testimony, Officer Galloway said that the first person who spoke with law enforcement was Ledlow and that he identified the suspects that night. According to Officer Galloway, Ledlow stated that Ware was driving the vehicle and that Nalls was in the front seat. When specifically asked if Nalls was in the passenger seat, Officer Galloway responded, "Yes, possibly." In his report, however, Officer Galloway stated that Nalls was driving the vehicle and that Ware was in the passenger seat. Later, Officer Galloway testified that he was mistaken about Ware being

---

[2] Jones testified that he was in the hospital for three months and that he was paralyzed from the waist down.

the driver of the vehicle. Officer Galloway testified that Ledlow described the vehicle as "a gray colored Chevrolet that had an auto tag on it like a dealer tag." In his report, however, Officer Galloway stated that Ledlow described the vehicle as a late-model gray-colored Chevrolet, Camry, or Honda with a Team Auto paper tag.

¶7. Finally, Investigator Danny Poe with the Greenville Police Department testified that he was one of the first officers to arrive at the scene. According to Investigator Poe, he spoke with Ledlow, who described the gray vehicle with the Team Auto tag and identified Nalls and Ware as the shooters. Additionally, Investigator Poe testified that Sergeant Sutton obtained a recorded statement from Jones while he was hospitalized. According to Investigator Poe, Jones identified Nalls and Ware as the shooters in the recorded statement.

¶8. After the State rested its case, Lamarcus Ware testified in behalf of the defense. Ware told the jury that he had been indicted for attempted murder but pled guilty to aggravated assault and had been sentenced to fifteen years in the custody of the MDOC. According to Ware, he shot Jones, and Nalls had nothing to do with the shooting. Ware testified that he did not know Nalls at the time of the shooting, and Nalls was not in the vehicle with him. Ware admitted that when he pled guilty, he accepted as true the fact that he "act[ed] in concert" with someone, and he acknowledged that he did not tell the judge that he acted alone. Then he testified that the only person he acted in concert with was the victim—Jones.

¶9. Finally, Nalls stipulated that he had a prior felony conviction. Nalls was convicted of attempted murder and possession of a firearm by a felon. On April 20, 2021, the circuit court sentenced Nalls, as a violent habitual offender, to serve two consecutive terms of life

4

without eligibility for parole. Nalls filed a motion for JNOV on May 3, 2021, and a motion for JNOV or a new trial on May 5, 2021. On May 5, 2021, the court denied Nalls' motion for JNOV or a new trial. On May 27, 2021, Nalls filed a notice of appeal.

¶10. After filing the notice of appeal, Nalls filed a pro se brief.[3] In his pro se brief, Nalls raises issues with respect to his first trial, which resulted in a hung jury. He also makes the following claims with respect to his second trial: (1) the court erred by admitting portions of Ledlow's testimony that were contradictory to his prior sworn testimony, (2) the judge was biased, (3) the court erred by sentencing him as a violent habitual offender, (4) trial counsel's assistance was ineffective, and (5) the jury did not give the appropriate amount of weight to Jones's testimony and Ware's testimony. Subsequently, the Office of State Public Defender Indigent Appeals Division filed an appellant's brief on Nalls' behalf claiming that the jury's verdicts were against the overwhelming weight of the evidence. The State filed an appellee's brief addressing only the weight of the evidence.

## DISCUSSION

¶11. At the outset, we note that "[t]his Court must have jurisdiction to consider this appeal." *Tingle v. State*, 285 So. 3d 708, 710 (¶9) (Miss. Ct. App. 2019) (quoting *Cane v. State*, 2016 So. 3d 1268, 1271 (¶7) (Miss. Ct. App. 2016)). Although "the State has not challenged appellate jurisdiction, we must determine whether jurisdiction exists." *Id*. (quoting *Hunt v. State*, 11 So. 3d 764, 766 (¶5) (Miss. Ct. App. 2009)).

¶12. Under Rule 25.1(c) of the Mississippi Rules of Criminal Procedure, "[a] motion for

---

[3] On the appellate docket, the document is titled "Brief (Proposal)."

5

a new trial shall be made within ten (10) days after entry of judgment (which, for purposes of this Rule, includes both adjudication of guilt and sentence)." Rule 4(e) of the Mississippi Rules of Appellate Procedure instructs that a criminal defendant who makes a "timely" motion for a new trial under MRCrP 25.1 has thirty days from the entry of the order denying such motion to file his notice of appeal.

¶13. Here, the court's sentencing order was filed on April 20, 2021. The record indicates that Nalls' attorney filed two post-trial motions on his behalf—one on May 3, 2021, and one on May 5, 2021. Because neither motion was filed within the ten-day period, the time for filing the notice of appeal was not tolled. M.R.A.P. 4(e). Additionally, Nalls' notice of appeal was not filed by his attorney until May 27, 2021, beyond the thirty days after the court entered the sentencing order. Therefore, Nalls' notice of appeal was not timely filed. M.R.A.P. 4(a).

¶14. This Court may suspend the requirements or provisions of the rules "[i]n the interest of expediting decision, or for other good cause shown[.]" M.R.A.P. 2(c). Nalls has not given any justification for the untimely filing of his notice of appeal. However, the State did not object to the timeliness of Nalls' post-trial motions or notice of appeal, and dismissing the appeal will likely spark additional pleadings. *See Gardner v. State*, 302 So. 3d 615, 616-17 (¶8) (Miss. 2020) (King, P.J., dissenting); *see also Gordon v. State*, 288 So. 3d 381, 388 (¶16) (Miss. Ct. App. 2019). Therefore, we suspend the rules and address the merits of Nalls' appeal. M.R.A.P. 2(c) (permitting extension of time to appeal "in criminal and post-conviction cases, but not in civil cases").

**I. Pro Se Brief**

¶15. Under Rule 28(b) of the Mississippi Rules of Appellate Procedure, "[a]n appellant in a criminal appeal may file a pro se supplemental Brief of the Appellant." The pro se brief "may address issues not raised by counsel," but the "issues must be based on the record." M.R.A.P. 28(b). Additionally, the pro brief "shall conform to the requirements of Rule 28(a), (e), (f), (h) and (l)." M.R.A.P. 28(b). Nalls failed to comply with Rule 28(a)(7) of the Mississippi Rules of Appellate Procedure, which provides that "[t]he argument shall contain the contentions of [the] appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." This Court has held that "[a]rguments that do not comply with Rule 28(a)(7) are 'procedurally barred.'" *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶39) (Miss. 2015)). Additionally, several of the issues raised in Nalls' pro se brief pertain to his first trial, which resulted in a hung jury. Because the notice of appeal in this case is from the judgment of conviction, the order denying JNOV or new trial, and the sentence imposed by the court after Nalls' second trial, we will not consider the issues relating to his first trial unless the issues in the first trial continued into the second trial. As to Nalls' remaining claims, we will briefly address them notwithstanding the procedural bars.

**A. Ledlow's Testimony**

¶16. Nalls suggests that the circuit court erred by admitting portions of Ledlow's testimony that were contradictory to the testimony that he presented during the first trial. According

7

to Nalls, Ledlow testified during his first trial that it was dark, that he did not see anything, and that a friend later told him that Nalls may have been the shooter. But during the second trial, he testified that he had seen Nalls in the back seat of a gold vehicle.[4]

¶17. The Mississippi Supreme Court has held that "with few exceptions, . . . where no objection is made at trial to an asserted error, a party is procedurally barred from asserting the error on appeal." *Birkhead v. State*, 57 So. 3d 1223, 1239 (¶61) (Miss. 2011) (quoting *Brown v. State*, 965 So. 2d 1023, 1029 (¶23) (Miss. 2007)). Additionally, "it is incumbent on the party asserting error to make a contemporaneous objection and obtain a ruling in order to preserve the objection." *Id.* Because Nalls did not contemporaneously object to Ledlow's testimony at trial and seemingly raised the issue for the first time during his sentencing hearing, we decline to hold the circuit court in error.

### B. Bias

¶18. Next, Nalls suggests that the judge was biased when he allegedly told him, "You come in here trying to kill people, pull up your mask and stop trying to stop this trial." Nalls does not provide any citation to the record to support his argument. Furthermore, this Court "will not consider matters that do not appear in the record, and [we] must confine [our] review to what appears in the record." *Penton v. State*, 282 So. 3d 621, 626 (¶17) (Miss. Ct. App. 2019) (quoting *Pulphus v. State*, 782 So. 2d 1220, 1224 (¶15) (Miss. 2001)). Accordingly, we decline to consider this issue.

### C. Sentencing

---

[4] Prior inconsistent statements are generally for the jury to consider.

8

¶19.    Next, Nalls suggests that the circuit court erred by sentencing him as a violent habitual offender.  During his sentencing hearing, Nalls seemingly argued that robbery was not a violent offense and that burglary of a dwelling was not considered a crime of violence at the time of his conviction in 2006; therefore, he should not have been sentenced as a violent habitual offender.

¶20.    However, this Court has "found no constitutional violation where an enhanced sentence was enforced based on felonies committed before the passing of a habitual-offender statute." *Moffite v. State*, 309 So. 3d 529, 539 (¶44) (Miss. Ct. App. 2019) (citing *Miller v. State*, 225 So. 3d 12, 15 (¶12) (Miss. Ct. App. 2017)).  Nalls' sentence is not a new penalty for his earlier crime of residential burglary, but rather a "stiffened penalty" for his recent crimes (attempted murder and possession of a firearm by a felon).  These crimes occurred after burglary of a dwelling qualified as a "per se crime of violence."[5]  Therefore, Nalls' enhanced punishment is not unconstitutional, and the court did not err by sentencing him as a violent habitual offender.

### D.    Ineffective Assistance

¶21.    Nalls suggests that he received ineffective assistance of counsel because his trial attorney failed to make objections, thoroughly cross-examine witnesses, and address the witnesses' ability to see the suspect(s) at the time of the shooting.  Additionally, Nalls claims

---

[5] "Prior to 2014, to designate burglary of a dwelling as a violent crime, the State had to prove actual violence during the commission of the burglary." *Moffite v. State*, 309 So. 3d 529, 539 (¶44) (Miss. Ct. App. 2019) (citing *Brown v. State*, 102 So. 3d 1087, 1092 (¶21) (Miss. 2012)).  "In 2014, the Legislature defined burglary of a dwelling as a 'per se crime of violence.'" *Id*. (quoting Miss. Code Ann. § 97-3-2 (Rev. 2014)).

that his trial attorney lied to him and "was not as enthusiastic or sharp as she was [during] the first trial."

¶22. "A claim of ineffective assistance of counsel may be asserted on direct appeal if the defendant is represented by appellate counsel who did not represent him at trial." *Stevens v. State*, 312 So. 3d 1205, 1210 (¶13) (Miss. Ct. App. 2021) (citing *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019)). "Generally, however, such claims are more appropriately brought during post-conviction proceedings." *Id*. at 1210-11 (¶13) (internal quotation marks omitted) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020)). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*. at 1211 (¶13). Additionally, "we may address such 'claims on direct appeal when the record affirmatively shows that the claims are without merit.'" *Id*. at (¶13). We address one claim here because the record proves the claim lacks merit, and we dismiss the others without prejudice.

¶23. "To prevail on a claim of ineffective assistance, the defendant must show both (1) 'that counsel's performance was deficient' . . . and (2) that he was prejudiced as a result . . . ." *Id*. at (¶14) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at (¶15).

¶24. As to Nalls' claim that his attorney failed to address the witnesses' ability to see, Jones

testified that although the shooting occurred at nighttime there was a light pole nearby. Jones also testified that there were other lights in the neighborhood and that he was able to see. Nevertheless, Nalls' attorney asked Ledlow on cross-examination, "Can we agree that it was pretty dark on February 27th, pretty dark at night?" Ledlow responded, "Yes." Accordingly, we find that the record affirmatively shows that this ineffective-assistance-of-counsel claim is without merit. However, we dismiss Nalls' remaining ineffective-assistance-of-counsel claims without prejudice so that he has an opportunity to raise them in a properly filed motion for post-conviction collateral relief.

## II.     Appellant's Brief Filed by the Office of State Public Defender

¶25.    Nalls' appellate attorney claims on Nalls' behalf that the jury's verdicts were against the overwhelming weight of the evidence.[6]

¶26.    "In reviewing the denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Grace v. State*, 281 So. 3d 986, 992 (¶18) (Miss. Ct. App. 2019) (quoting *Kirk v. State*, 160 So. 3d 685, 697 (¶31) (Miss. 2015)). "The evidence is weighed in the light most favorable to the verdict." *Id*. "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Thompson v. State*, 302 So. 3d 1230, 1234 (¶11) (Miss. Ct. App. 2020) (quoting *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)).

---

[6] Nalls also suggested in his pro se brief that the jury gave too much weight to Jones' testimony and not enough weight to Ware's testimony.

¶27. First, Nalls argues that his convictions should be reversed because Ware's testimony contradicted Jones' and Ledlow's testimony. At trial, Jones testified that he had known Nalls and Ware before the shooting and that he was friends with Nalls. Although he testified that he was unable to provide a statement at the crime scene, he later provided a statement and identified Nalls and Ware as the shooters. Ledlow testified that he had known Nalls and Ware before the shooting and that he had identified them to law enforcement as the shooters. Officer Galloway and Investigator Poe testified that Jones and Ledlow identified Nalls and Ware.

¶28. On the other hand, Ware told the jury that although he was indicted for attempted murder, he pled guilty to aggravated assault and was sentenced to fifteen years. Although Ware testified that he acted alone, he admitted that he accepted as true the fact that he acted in concert when he pled guilty, and he acknowledged that he did not tell the judge otherwise.

¶29. As stated, "[w]e will not substitute our factual findings for that of the jury in a contest of credibility." *Bishop v. State*, 282 So. 3d 633, 641 (¶32) (Miss. Ct. App. 2019) (quoting *Roberson v. State*, 19 So. 3d 95, 105 (¶25) (Miss. Ct. App. 2009)). Here, the jury weighed the conflicting testimony and decided that Jones' and Ledlow's testimony was more credible than Ware's testimony.

¶30. Additionally, Nalls takes issue with the State's "lack of investigation." Specifically, Nalls asserts that the State failed to present evidence linking him to the vehicle or any firearm used in the shooting. Although the State does not address this argument, this Court has stated, "We do not find an obligation on the State to present proof of the breadth of its

investigation. It is necessary but also sufficient that the State present proof that the defendant committed the crime." *Bryant v. State*, 853 So. 2d 814, 820 (¶21) (Miss. Ct. App. 2003).

¶31. After review we cannot say that the jury's verdicts were "so contrary to the overwhelming weight of the evidence that to allow [them] to stand would sanction an unconscionable injustice." *Grace*, 281 So. 3d at 992 (¶18). Accordingly, this issue is without merit.

## CONCLUSION

¶32. After review, we affirm Nalls' convictions and sentences. However, we dismiss Nalls' remaining ineffective-assistance-of-counsel claims without prejudice so that he has an opportunity to raise them in a properly filed motion for post-conviction collateral relief.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**