MAXWELL, J„
for the Court:
¶ 1. Saheed Davis shot and killed Maurice Warner at a family gathering on Christmas Day. Davis was convicted of murder and sentenced to life imprisonment. On appeal, he argues flaws in the jury instructions, hearsay testimony from an investigator, and his inability to introduce evidence of the victim’s bad character warrant reversal. Davis also challenges the sufficiency and weight of the evidence supporting his conviction and claims his attorney was constitutionally ineffective. After review, we affirm his conviction and sentence.
Background
¶ 2. On Christmas Day 2008, Davis and his fiancée, Yolanda Wooten, joined a large gathering of Yolanda’s family members at the Wooten family home in Jackson, Mississippi. Yolanda’s sister, Latoya, and her husband, Maurice, were among those present. At some point that day, Davis and Maurice — who undisputedly had strong disdain for one another — exchanged words in front of several family members. When Davis and Yolanda later stepped outside of the house, Maurice followed them.
¶ 3. According to Yolanda, Davis asked Maurice what he had said to him earlier that day. And Maurice clarified for Davis that he had called him “a punk a*s, f*ggot a*s b*tch.” When Davis asked, “What?” Maurice said, “N*gger, you heard me.” Maurice then swung and hit Davis in the neck. After the tussle was broken up, Maurice headed for his car, and Davis jumped the fence and ran to his vehicle. Soon after, Davis returned armed with a .40-caliber pistol.
¶ 4. According to multiple witnesses, Davis then shot Maurice. One of the two initial bullets struck Maurice in the head; the other hit his throat. Maurice, who was unarmed, collapsed in the street. And while Maurice was lying face down on the concrete, Davis stood over his body and shot him eight more times — twice in the right shoulder and six times in the back. An ambulance transported Maurice to University Medical Center where he died from the gunshot wounds.
¶ 5. Davis fled and eluded authorities until October 2010, when he was caught by *1145 U.S. Marshals in Texas and returned to Mississippi. Davis was indicted for deliberate-design murder with a handgun in violation of Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006). Davis pursued a self-defense theory at trial, but the jury rejected that the shooting was justified. The jury found Davis guilty of murder, and he was sentenced to life imprisonment. He now appeals.
Discussion
¶ 6. On appeal, Davis argues the trial judge erred in (1) not sua sponte crafting a separate heat-of-passion manslaughter instruction, (2) instructing the jury that if it deemed Davis the aggressor, it could not find he acted in self-defense, (3) allowing hearsay testimony, and (4) preventing witnesses from testifying about alleged specific instances of Maurice’s bad conduct toward Davis. Davis also challenges (5) the sufficiency and weight of the evidence and argues (6) his defense counsel was constitutionally ineffective.
I. Jury Instructions

A. Heat-of-Passion Instruction

¶ 7. Davis’s actual trial strategy is somewhat incongruent with his more recently crafted appellate argument challenging the lack of instruction on heat-of-passion manslaughter. At trial Davis’s attorney stringently argued that the shooting was in self-defense — and was not murder or manslaughter. But on appeal, he claims that even though he neither requested a heat-of-passion manslaughter instruction nor proposed one to the trial judge, the judge erred in not sua sponte fashioning a separate substantive instruction on this lesser offense. While this argument is waived, we find it is further complicated, as discussed below, by the fact that the State did indeed offer an instruction defining heat-of-passion, to which Davis did not object.

(1)Waiver

¶ 8. Our first inquiry involves Davis’s waiver of this issue. Our supreme court has held that if a defendant fails to “tender a heat-of-passion-manslaughter jury instruction to the trial court[,] ... he is procedurally barred from arguing on appeal that the jury should have been instructed on heat-of-passion manslaughter.” Neal v. State, 15 So.3d 388, 408 (¶ 51) (Miss.2009). And here Davis did not ask for, much less tender, a separate proposed heat-of-passion manslaughter instruction. Thus, he is barred from first raising this issue on appeal.

(2)Plain Error

¶ 9. Second, because Davis forfeited this issue by not urging it at trial, he proceeds solely under the more stringent plain-error doctrine. Puckett v. United States, 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). Under this standard, we will generally only exercise our discretion to review and correct a clear or obvious error if it “seriously affects the fairness, integrity or public reputation of judicial proceedings.” Id. at 135, 129 S.Ct. 1423. So our review focuses on whether there was a manifest injustice.
a. Manslaughter
¶ 10. Considering the applicable legal principles and the relevant instructions given, we note that manslaughter is generally defined as “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]” Miss. Code Ann. § 97-3-35 (Rev.2006). There are several distinct variants of this lesser-included offense of murder, including both “imperfect self-defense[,]” which our supreme court has recognized reduces “an intentional kill *1146 ing ... [to] manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm[,]” Moore v. State, 859 So.2d 379, 383 (¶ 9) (Miss.2003) (quoting Wade v. State, 748 So.2d 771, 775 (¶ 12) (Miss.1999)), and heat-of-passion manslaughter. The jury here was instructed on both.
b. Instruction S-8
¶ 11. At trial, the State offered an imperfect self-defense instruction, S-8, without objection. This instruction advised the jury it could consider the lesser offense of manslaughter if it found that the State had failed to prove all the elements of murder, and that Davis killed Maurice under an “actual bona fide[ ] belief that such a killing [was] necessary in order to protect himself from great bodily harm or death, but that such belief [was] not reasonable under the circumstances.”
c. Instruction S-7
¶ 12. The trial judge also granted the State Instruction S-7 — without objection by Davis — which defined “heat of passion” as follows:
The court instructs the jury that “heat of passion” is defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
This passion should be an emotion brought about by some insult, provocation, or injury, which would produce in the minds of ordinary men “the highest degree of exasperation.” We have stated that words alone and disagreements among people are not enough to invoke the passion required for this defense. Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.
(Emphasis added). This instruction tracks the definition and description of heat-of-passion manslaughter from Phillips v. State, 794 So.2d 1034, 1037 (¶9) (Miss.2001). And the form-of-the-verdict instruction, S-5A, instructed that if the jury found Davis not guilty of murder, it should continue deliberations to determine if he was guilty of manslaughter.
¶ 13. When reviewing jury instructions, we read the instructions “as a whole to determine whether the jury was fully and fairly instructed according to the applicable law.” Clark v. State, 40 So.3d 531, 544 (¶ 36) (Miss.2010) (citing Davis v. State, 18 So.3d 842, 847 (¶ 14) (Miss.2009)). As our supreme court has emphasized, “if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.” Id. (quoting Davis, 18 So.3d at 847 (¶ 14)).
¶ 14. After fairly viewing Instructions S-7, S-8, and S-5A, in combination with one another, we find these instructions, as a whole, adequately announce the applicable rule of law that a killing in the heat of passion “will reduce a homicide from the grade of murder to that of manslaughter.” So not only is Davis’s challenge barred, but we find no instructional error and certainly no manifest injustice affecting the fairness, integrity, or public reputation of his trial.

B. Self-Defense Instruction

¶ 15. Davis pursued a self-defense theory and was given, at his request, an instruction, directing the jury to find for him if it deemed the killing justified. But *1147 he objected to the judge’s giving of a separate instruction, S-6, which advised the jury: “[I]f the defendant is the aggressor, the defense of self[-]defense is not available to him even where he must resort to defending himself against an unexpectedly aggressive intended victim.” On appeal, Davis argues the trial judge erred in giving Instruction S-6, since as Davis sees it, there was no evidence he was the aggressor.
¶ 16. Our review of this issue requires that we ask whether the challenged “jury instruction correctly stated the law and was supported by the evidence.” Bradford v. State, 102 So.3d 312, 317 (¶ 22) (Miss.Ct.App.2012) (citing Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (¶ 78) (Miss.2010)). In addressing this two-part inquiry, we begin by noting that “Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense.” Simmons v. State, 805 So.2d 452, 473 (¶ 30) (Miss.2001) (quoting Layne v. State, 542 So.2d 237, 244 (Miss.1989)). Though Yolanda was the only witness to the entire exchange and testified Maurice’s insults and initial fight with Davis were unprovoked, our law is clear that “one who leaves an altercation, arms himself, and returns with the intent to and does use his weapon on the other party cannot claim self-defense.” Griffin v. State, 495 So.2d 1352, 1354 (Miss.1986) (citing Cooley v. State, 391 So.2d 614, 617 (Miss.1980)); see also Skinner v. State, 751 So.2d 1060, 1074 (¶ 48) (Miss.Ct.App.1999).
¶ 17. By almost all accounts, including Yolanda’s, Davis left the immediate area of the threat, jumped a fence, went to his car, and returned armed with a handgun. He then opened fire on Maurice, who was unarmed, shooting him in the head and neck. Immediately after, Davis hovered over the face-down man, and emptied his pistol into his back and shoulder. After review, we find the law was correctly stated and that the evidence was more than adequate to support Instruction S-6. Thus, the trial judge did not abuse his discretion in giving it.
II. Hearsay Testimony
¶ 18. Davis also suggests the State elicited impermissible hearsay, which violated his Sixth Amendment confrontation right, when the judge allowed an officer to testify about his interview of Yolanda at the scene immediately after the shooting.
¶ 19. In response to the State’s question about what information Officer Michael Shorter had obtained from Yolanda, Officer Shorter testified, over defense counsel’s objection:
At the time when I was speaking to [Yolanda], she advised that the suspect and the victim were in an altercation. The victim had been provoking the suspect all day or what not, saying little gestures to him. She didn’t hear what he said, but she said that he was provoking him all day. They had, like, a Christmas gathering. And that day, also, the victim had — had assaulted him, I believe, by slapping him [on] the face or whatever, and that’s when supposedly the suspect went out the house and got a — got a gun.
The trial judge found Officer Shorter’s recitation was admissible to show the investigative steps the officer had taken shortly after the shooting — not for the truth of the matter asserted. Though Davis did not invoke his confrontation right at trial, he does on appeal. So we review his unpre-served constitutional claim for plain error.

A. Confrontation Clause

¶ 20. The Sixth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment, *1148 guarantees criminal defendants the right to confront the witnesses against them. U.S. Const. amends. VI, XIV; see also Miss. Const. art. 3 § 26. Consequently, when hearsay is deemed “testimonial,” it cannot be admitted against a criminal defendant, unless the declarant is unavailable at trial and the defendant has had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶21. But we need not delve into the varying distinctions nor make the often difficult constitutional call of whether the challenged statement was “testimonial” or “non-testimonial” in nature. See Michigan v. Bryant, — U.S. -, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011); Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). We find such analysis unnecessary here, since Yolanda ultimately testified at Davis’s trial, subjecting herself to cross-examination.
¶ 22. The United States Supreme Court has recognized: “[T]here is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant’s out-of-court statements, as long as the declar-ant is testifying as a witness and subject to full and effective cross-examination.” California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Or as the Court more recently put it, “the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witnesses] demeanor satisfy the constitutional requirements.” United States v. Owens, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (citing Green, 399 U.S. at 158-161, 90 S.Ct. 1930).
¶ 23. Because Yolanda testified and all of these traditional protections were present, we find Davis’s confrontation rights were not violated by Officer Shorter’s recitation of Yolanda’s statement.

B. Statements Made During Police Investigation

¶24. Still, there is the hearsay question, which Davis preserved. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). While hearsay is generally inadmissible, our state supreme court has created an exception to the hearsay rule for statements made to police during the course of their investigations. Rubenstein v. State, 941 So.2d 735, 764 (¶ 111) (Miss.2006). Relying on this rationale, this court has similarly held that “out-of-court statements made to the police during the course of their investigations [are admissible].” Gray v. State, 931 So.2d 627, 631 (¶ 14) (Miss.Ct.App.2006) (citing Swindle v. State, 502 So.2d 652, 658 (Miss.1987)). We review the admission of such evidence for an abuse of discretion. Lynch v. State, 877 So.2d 1254, 1281 (¶ 86) (Miss.2004).
¶ 25. Officer Shorter testified that after securing the crime scene, he began interviewing witnesses. Through his conversation with Yolanda, Officer Shorter identified Davis as a suspect. He also learned Maurice had been provoking Davis before the shooting. From this, we find it was within the trial court’s discretion to allow Officer Shorter’s recitation of Yolanda’s statement for a purpose other than to prove the truth of the matter asserted. But even if it was error to do so, we find most of the recitation favored Davis. And the portion that did not — the mention that he retrieved a gun — was independently established at trial through several eyewitnesses, including Yolanda, who testified and were cross-examined. Therefore, even if it was error to admit Yolanda’s purported statement through Officer Shorter, it was at most harmless.
*1149 III. Character Evidence
¶ 26. Davis also claims several of the trial judge’s evidentiary rulings prevented him from questioning witnesses about Maurice’s reputation for violence and his specific past instances of violent behavior. While this may be so, because Davis made no proffer of Maurice’s violent reputation nor made a record of the purported specific instances of his violent conduct, we do not hold the trial judge in error.
¶ 27. Mississippi Rules of Evidence 404 and 405 govern admissibility of character evidence. While Rule 404 precludes admitting character evidence to prove action in conformity therewith, it “specifically authorizes inquiry by a criminal defendant into a victim’s character.” Jackson v. State, 784 So.2d 180, 184 (¶ 23) (Miss.2001). This exception enables defendants to prove that a purported victim was the initial aggressor and that the defendant acted in self-defense. Id. at 185 (¶ 23) (citing M.R.E. 404 emt.). If Rule 404 is satisfied, opinion or reputation-based character evidence is admissible “without further restriction.” Jackson, 784 So.2d at 185 (¶ 23). However, when character evidence passes through Rule 404(a)(2), and is offered as specific instances of conduct, it is only admissible on cross-examination. Jackson, 784 So.2d at 185 (¶ 23) (citing M.R.E. 405(a)).
¶ 28. Yet where character or the trait of character is “an essential element of a charge, claim, or defense,” specific instances of conduct are admissible whether on direct or cross-examination. Id. And such past acts are admissible where a defendant alleges self-defense, as the character trait of violence is an “essential element” of the defense under Rule 405(b). Jackson, 784 So.2d at 185 (¶ 23) (citing Heidel v. State, 587 So.2d 835, 845 (Miss.1991)).
¶ 29. Here, Davis claims his self-defense theory was frustrated, pointing to three instances where he insists the judge “stymied” his attempt to delve into his long-running feud with Maurice.

A. Previous Threats by Victim

¶ 30. During Yolanda’s cross-examination, the State objected on relevancy grounds, when defense counsel asked Yolanda if she was ever present when Maurice threatened Davis. The judge allowed the question, but instructed that only recent threats would be relevant. Davis’s attorney did not take issue with the court’s ruling. Instead, he rephrased the question, prompting the following exchange:
Q: Leading up to this incident were you present or did you — in the close vicinity to this incident were you privy to any threats that Maurice may have made against [Davis]?
A: He just told me himself that he couldn’t have him around him.
Q: Who told you that?
A: Maurice Warner did.
Q: And why didn’t he want [Davis] around him?
The State: Objection, Your Honor. This is all hearsay.
The Court: I’m going to sustain that.
Defense Counsel: Okay.
There was no attempt to elicit further testimony from Yolanda to continue this line of questioning, nor was any proffer given.
¶ 31. While we generally agree that Rule 405 authorized Davis to offer specific instances of Maurice’s threats, his defense counsel did not dispute the trial court’s ruling. And more important to our review, he failed to proffer any details of the alleged prior threats Yolanda would have testified about had she been allowed to continue.
*1150 ¶ 32. Our evidentiary rules clarify that error may not be predicated upon a ruling that excludes evidence unless a substantial right of the party is affected, and the substance of the. evidence was made known to the court or was apparent from the context of the questions. M.R.E. 103(a)(2). And our supreme court similarly instructs that “[w]hen testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal.” Metcalf v. State, 629 So.2d 558, 567 (Miss.1993) (citations omitted). Because there is no record of a proffer and the alleged prior violent instances are not clear from the question, we cannot find the trial judge abused his discretion on this evidentiary call.

B. Length of Feud Between Davis and Victim

¶ 33. Michelle Wooten, Yolanda’s mother, was also asked by defense counsel at trial if she had been aware of the feud between Davis and Maurice. She answered: “Well I had never been just told, but I had heard that there was some confrontation between the two of them.” After defense counsel then asked how long the feud had been ongoing, the judge sustained the State’s hearsay objection.
¶ 34. Again, defense counsel failed to proffer what Michelle’s testimony might have been had she been allowed to continue. See M.R.E. 103(a)(2); Metcalf, 629 So.2d at 567. And we will not reverse based on an evidentiary exclusion, when a party has not proffered “the evidence he would have offered had the court ruled otherwise.” Heidel, 587 So.2d at 844.

C. Police Officer’s Familiarity with Victim

¶ 35. The last challenged exclusion concerns the testimony of Eric Smith, an investigator with the Jackson Police Department, who testified for the State. On cross-examination, Detective Smith confirmed he had known Maurice before the shooting. When defense counsel asked how he knew Maurice, the State objected. But defense counsel withdrew the objection before the judge could rule. If the judge is not given an opportunity to err, we find it only makes sense that there can be no error. See Vickers v. State, 994 So.2d 200, 224 (¶ 92) (Miss.Ct.App.2008). So we find no merit to this challenge.
IV. Sufficiency of the Evidence
¶ 36. Davis also contests the sufficiency of the evidence. He argues that, at most, the evidence is sufficient to support manslaughter, but not murder, because he killed Maurice in the “heat of passion” after being provoked by him—an argument he did not make at trial.
¶ 37. When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). Credible evidence consistent with guilt must be accepted as true. We are instructed to give the State the benefit of all favorable inferences reasonably drawn from the evidence. Jones v. State, 20 So.3d 57, 64 (¶ 16) (Miss.Ct.App.2009) (citing Hughes v. State, 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008)). The jury resolves matters of weight and credibility. Reversal is proper when reasonable and fair-minded jurors could only find the accused not guilty. Id. Our essential duty is to determine whether from the evidence presented it would be impossible for a reasonable juror to find the defendant guilty. Ducksworth v. State, 767 So.2d 296, 301 (¶ 10) (Miss.Ct.App.2000).
¶ 38. Davis’s jury was instructed on murder- and the lesser-included offense of manslaughter. Deliberate-design murder is “[t]he killing of a human being without *1151 the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed[.]” Miss.Code Ann. § 97-3-19(l)(a). Manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]” Miss.Code Ann. § 97-3-35.
¶ 39. Issues regarding whether a crime occurred in the heat of passion are resolved by the jury. The jury heard testimony that Maurice had struck Davis, so there was likely anger and rage on Davis’s part. But anger alone is insufficient to support a heat-of-passion jury instruction. See Mullen v. State, 986 So.2d 320, 323 (¶ 9) (Miss.Ct.App.2007). “[TJhere must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and that passion usurps the mind destroying judgment.” Id.
¶40. The jury obviously determined that in its view, the circumstances confronting Davis would not rouse a normal mind to the level that reason is overthrown and judgment is destroyed. Further, Davis’s attorney did not even argue during his closing argument that the killing occurred in the heat of passion — he instead pressed self-defense. Indeed, he was emphatic that “this is not a murder case. This is not a manslaughter case. This is self[-]defense.”
¶ 41. The jury heard evidence from several eyewitnesses that after the skirmish broke up, Davis leapt over a fence, headed for his ear, and returned with a semiautomatic pistol, which he used to shoot an unarmed man ten times. Viewing this evidence in the light most favorable to the State, which we must, we do not find that fair-minded jurors could only find Davis guilty of manslaughter on these facts.
V. Weight of the Evidence
¶ 42. Davis similarly contests the weight of the evidence supporting his murder conviction. When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict. Bush, 895 So.2d at 844 (¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). We will not disturb a verdict unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citation omitted). In addressing this challenge, we return to the evidence just mentioned. Viewing this evidence this time in the light most favorable to the verdict, we find Davis’s murder conviction is not against the overwhelming weight of the evidence.
VI. Ineffective Assistance of Counsel
¶ 43. Davis finally argues his defense counsel was ineffective for failing to request a heat-of-passion-manslaughter instruction and not introducing Maurice’s prior bad acts.
¶44. To establish ineffective assistance of counsel, Davis must show: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. And here we see nothing to overcome this presumption. However, we typically only address the merits of an ineffective-assistance-of-counsel claim on direct appeal when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow *1152 the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Neither of these requisites are present.
¶ 45. Since the record is simply not as developed as it would be in a post-conviction-relief proceeding, we deny relief on this issue without prejudice. Davis may seek post-conviction relief on this claim if he so desires.
¶ 46. We affirm.
¶ 47. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.