BARNES, J.,
dissenting:
¶20. While I.agree with the majority that the trial court erroneously excluded Harrell’s attempted testimony of Leonard’s alleged threat, I cannot agree that Harrell’s ultimate reference to a generic threat cured the error. The trial court did not allow Harrell to testify as to the specifics of the alleged threat he overheard when Leonard was speaking to Dennis. I find that the prosecutors’ and trial, court’s errors interrupting and precluding Harrell’s testimony when he was trying to present his defense severely prejudiced Harrell. I would reverse and remand for a new trial.
¶ 21. “Hearsay” is defined as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). All too often, we see records where a witness is informed he “can’t say what anyone else *23 said” without any attempt to determine whether the statements are being used to prove the truth of the matter. This is one such case. During Harrell’s direct examination, the prosecutor objected to the defendant’s testifying to the conversation he heard between Leonard and Dennis, arguing it was hearsay. This conversation allegedly contained threats against Harrell, and explained why he attempted to shoot Leonard. The trial judge agreed and sustained the objection several times. I agree with the majority that 'the alleged threats were not offered as proof of the truth of any matter asserted, and thus were not hearsay, as the prosecution claimed and the trial court ruled.
¶22. I cannot agree, however, that Harrell was allowed to give his full version of the events in spite of the trial court’s erroneous ruling. Harrell was improperly interrupted numerous times by either the prosecutor or the trial judge when trying to testify about the events, and the impact highly prejudiced his defense. On direct examination, Harrell’s counsel asked him what happened when he got to work the morning at issue, but warned him, “Just tell what happened_ You can’t say what other people said.” The following is an example of the frustrating attempt of Harrell to explain what he heard Leonard and Dennis say. Harrell explained about their farm work, and stated: “We were coming back down to the combine. Mr. [Leonard] Davis pulled up beside Pete [Dennis] on the road. He stopped and told me to let the window down. They was talking.” The colloquy continued:
THE COURT: Hold on one second. You are forgetting. You can’t tell us what somebody else said.
THE WITNESS (Harrell): I mean— I’m not your Honor, I mean if I don’t — if I don’t say what happened — I mean I’m
not saying what they said. I am telling you what happened.
THE COURT: I know it but you are telling us what they said.
THE WITNESS: They said — all right. Okay. I’m sorry.
THE COURT: You can tell your side of the story but you cannot tell us what someone else said.
THE WITNESS: All right sir.
[[Image here]]
THE COURT: Just try to remember that. I know sometimes it’s hard —
THE WITNESS: We — they stopped on the side of the road. They let the window down. Leonard Davis said “Pete [Dennis] you need to talk to your worker.”
THE COURT: There you go again. “Leonard Davis said.”
MR. JOHNSON (Defense Counsel): Your Honor.
THE WITNESS: I don’t understand.
MR. JOHNSON: Your Honor, may we approach?
THE WITNESS: Because I don’t understand.
(WHEREUPON, discussion was had between Court and counsel out of the hearing of the jury and on the record.)
MR. JOHNSON: Your Honor, this statement is not hearsay because it does not go to the truth of the matter asserted. This is a statement that is considered to show his state of mind. This is when the statement was made.
THE DEFENDANT: That is right.
THE COURT: And he heard it.
MR. GRESHAM (Prosecutor): Exception to the hearsay rule. More than just is going to the—
MR. JOHNSON: He said it is not and he heard the threat.
[[Image here]]
*24 THE COURT: He said he was trying to get around to saying — he didn’t say it. .He ,was telling — he was saying something else — that he threatened me.
MR. JOHNSON: What-the threat was made in his presence — what he heard.... This is what Leonard said to .Pete [Dennis] in his presence when he overheard the threat.
MR. WILLIAMS (Prosecutor): He cannot refer to what he — Leonard—said. He said this is what Pete [Dennis] said.
MR. JOHNSON: No, he didn’t. No.
[[Image here]]
THE COURT: I will let him testify. He can frame it in hearing what somebody said, and direct it to that, if he framed it in that manner.
MR. JOHNSON:, All right.
THE COURT: But otherwise, it is still hearsay.
MR. GRESHAM: It is hearsay.
MR. JOHNSON: Your Honor, if a threat is made in your presence, I think he can testify as to what he heard, because they want to know why did you do what you did.
THE COURT: Let him ask him if he heard a threat.
MR. GRESHAM: Your Honor, that is a leading question. I’m going to object to that.
[[Image here]]
MR. JOHNSON: Did anybody make a threat?'
MR. GRESHAM: That is leading— “threat.”
MR. JOHNSON: Were any threats made? , ,
MR. GRESHAM: That is a leading question.
THE COURT: He is right.
MR. JOHNSON: We’ll withdraw the question.
BY MR. JOHNSON:
Q. Did you hear any conversation between Mr. Leonard Davis and Mr. Pete [Dennis]?
A. Yes, I did.
Q. Did that conversation involve you?
A. Yes, sir.
Q. When you heard that conversation, how did that make you feel?
A.. Well I didn’t even know he was talking to me. And then when he said — when he pulled off from Pete
■ [Dennis], he — me and him made eye contact.
THE COURT: You’re going to have to refrain from that.
MR. JOHNSON: Your Honor— your Honor he—
BY MR. JOHNSON:
Q. When , he made eye contact with you, what happened?
A. He said “I’m talking to you m» » ⅜ That was his word.-
THE COURT: That is sustained. You cannot testify in that manner as to what someone said.
BY MR. JOHNSON:
Q. Did Mr. [Leonard] Davis say anything to you?
A. , That is what he said to me.
Q. Just answer; yes or no. Did he say anything to you?
A. Yes, sir.
Q. What did you do?
A. Can I say what I said? ■
Q. Yes. Say what you said.
THE COURT: He asked you what did you do when you heard the statement.
THE WITNESS: What did I do?
THE COURT: What did you do?
*25 THE WITNESS: .No. He asked me what I said. Ain’t that is what you said?
THE COURT: No. He asked you what'did yoü do.
BY MR. JOHNSON:
Q. What did you do when Mr. [Leonard] Davis said something to you?
A. I made a statement back to him.
Q. What did you say to him?
A. I'told him “F*k you.”
Q. What did Mr. [Leonard] Davis do?
A. Turned around and come back up there where we went on up there.
Q. What happened then?
A. Mr. [Leonard] Davis pulled his truck at the. side. We pulled on the back. I slid, in the truck and watched Mr. [Leonard] Davis reach' on his seat towards his glove compartment and start to get out the truck. That is when I jumped off the back of the truck-run around to the side — opened the door and got the rifle out of there,
Q. Why did you go get the rifle?
A. Threatened me.
Q. Speak into the microphone. •
A. He threatened me.
Q. How did he threaten you?
MR. GRESHAM: Your Honor.
BY MR. JOHNSON:
Q. How did he threaten you? • 'What did he do?
THE COURT: The objection is sustained.
MR. JOHNSON: Your Honor, the question is, what did he do?
THE COURT: All right. What did you do when you were threatened by Mr. [Leonard] Davis?
THE WITNESS: Mr. [Leonard] Davis said he . was going to — I mean.
BY MR. JOHNSON:
Q. Let me stop you. What did he do? Describe his actions.
A. I can’t say what he said. I’m trying to say— .
Q. What did he do?
A. What did he do? He — he—we had. eye-to.-eye contact., And his ■ statement .made me say what I said. Then he turned his truck around and came back up there.
Q. Was he in the truck?
A. He was getting out of his truck. I sat on the back of the truck till I seen him open his door — reach on the — like he was going in the glove compartment or, on his seat to get something and was — you. know— coming to get it. out of his truck. That is when I reacted — jumped off the truck — went around — opened the door and grabbed the gun.
¶ 23. The majority mistakenly assumes the threat made by Leonard to Harrell was,' “I’m "talking to- you m* * * *r f* * * *r.” I disagree. The threat which the jury did not hear was made in a conversation between Leonard and Dennis, when Leonard drove up to Dennis in his pickup truck, with Harrell sitting in the bed of Dennis’s truck, unbeknownst to Leonard. Leonard admitted to this fact during his direct examination. This fact is also apparent .from the following testimony of Harrell:
THE DEFENDANT: We [Dennis and Harrell] got , a pallet and two 30-gallon drums and was putting it on the back of the truck. I go,t on the back of the truck — put my foot on the pallet — sitting on the tool box— Mr. [Leonard] Davis pulled up beside Pete [Dennis] on *26 the road. He stopped and told me to let the window down. They was talking.
[[Image here]]
THE DEFENDANT: We — they stopped on the side of the road. They let the window down. Leonard Davis said “Pete [Dennis] you need to talk to your worker.”
At this point in the colloquy the trial judge interrupted- Harrell because he was stating what “Leonard Davis said.” The defense attorney tried to explain that Harrell was about to testify of the threat he heard Leonard tell Dennis. After a discussion between the trial judge and both counsel, defense counsel decided to withdraw the question. Defense counsel continued questioning Harrell about the threat:
BY MR. JOHNSON:
Q. Did you hear any conversation between Mr. Leonard Davis and Mr. Pete [Dennis]?
A. Yes, I did.
Q. Did that conversation involve you?
A. Yes, sir.
Q. When you heard that conversation, how did that make you feel?
A. Well, I didn’t even know he was talking to me. And then when he said — when he pulled off from Pete [Dennis], he — me and him made eye contact.
Harrell testified that once Leonard saw him, Leonard said: “I’m talking to you m* * * *r f* * * *r.” However, I cannot agree with the majority’s conclusion that this was the “threat” at issue. Based on the timing and the language, this phrase is not even a threat. Leonard did not even know Harrell was in the bed of the pickup truck until this point when the trucks separated, and Leonard “made' eye contact” with Harrell.
¶24. The threat at issue was made when Leonard did not know Harrell was in the bed of Dennis’s truck. Harrell was not allowed to testify to this threat. I acknowledge that it would have been better for the defense to proffer the threat. However, I cannot say if the proffer had been made, I could have determined a substantial right of the defendant had not been affected. See Davis v. State, 130 So.3d 1141, 1150 (¶ 32) (Miss.Ct.App.2013) (error may not be predicated upon a ruling that excludes evidence unless a substantial right of the party is affected).
¶25.. Preemptive self-defense was the crux of Harrell’s defense, which relied on evidence that he had reason to retrieve the .22 caliber rifle from Dennis’s truck. The Mississippi Supreme Court has reiterated that a “criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant’s defense where there is testimony to support the theory.” Terry v. State, 718 So.2d 1115, 1121 (Miss. 1998). (citing Keys v. State, 635 So.2d 845, 848-49 (Miss. 1994)). Although Harrell was ultimately able to get the words “he threatened me” out, I find that hardly gave him a fair chance to present his defense to the jury; further, it would be for a jury to decide whether the nature of the threat justified Harrell’s actions. The jury did not have to believe Harrell’s testimony, but it was never given the opportunity to hear it. For these reasons, I dissent.