# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00537-COA

JOHN ANDREW CASEY A/K/A JOHN CASEY        APPELLANT
A/K/A JOHN A. CASEY

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/24/2014 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND TEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 11/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1. John Andrew Casey appeals his conviction for aggravated assault of his then girlfriend, Lauren Brocato. While his first trial resulted in a mistrial on this charge, he was

convicted of aggravated assault after a second trial. Casey now appeals citing Rule 403[1] and claims the judge should have excluded evidence that during the assault he caged Lauren in a dog crate before wrapping her in a chain. Because the State offered this evidence in his first trial to prove kidnapping—a charge for which he was aquitted—Casey argues its probative value in his second aggravated-assault trial was outweighed by its potential prejudice. But the trial judge disagreed. He found the dog crate and chain episodes were part of the full series of events leading to Lauren's serious bodily injuries. So the State had the right to tell the jury about them. Because we find the judge's decision to admit the evidence fell with his broad discretion under Rule 403, we find no reversible error.

¶2. We also find no reason to reverse based on Casey's insufficiency-of-the-evidence claim. When viewed in the light most favorable to the State, the victim's testimony, along with other evidence, was such that a reasonable juror could find beyond a reasonable doubt Casey committed aggravated assault. We therefore affirm.

## Background Facts and Procedural History

### I. Events Leading up to First Trial

¶3. Around 6 a.m., Monday, May 2, 2010, Lauren showed up at her parents' doorstep bruised, battered, and struggling to breathe. Her mom rushed her to the hospital, where she spent five days recovering from a collapsed lung, broken ribs, and a fractured eye socket.

¶4. A deputy with the Coahoma County Sheriff's Department arrived at the hospital soon

---

[1] M.R.E. 403.

2

after Lauren was admitted. Lauren identified her attacker as her on-again-off-again boyfriend, Casey. The deputy left the hospital and went with another investigator to Casey's place of employment. When the two confronted Casey, they noticed his hand was bruised and swollen. They took Casey to the Sheriff's Department for questioning. Then, with Casey's consent, they went to search his house—the place where Lauren said Casey had attacked her. In their search, they found details that corroborated Lauren's description of what happened, including an unloaded pistol beside the bed and a broken floor tile in the kitchen. So the deputies arrested Casey.

¶5. Casey was indicted for kidnapping, sexual battery (three counts), and aggravated assault. At the end of his first trial, the jury acquitted him of the kidnapping and sexual-battery charges. But the jury could not reach a decision on the aggravated-assault charge, which led to a mistrial on this count.

### II. Second Trial

¶6. Casey was retried for aggravated assault and found guilty.

#### A. Lauren's Testimony

¶7. During the second trial, Lauren tearfully testified about the night she was attacked. Casey had invited Lauren to come over to his house for a cookout the afternoon of May 1, 2010. When she arrived, three other men—all friends of Casey—were there. Casey's friends left between 6 and 7 p.m., but Lauren stuck around. That is when Casey and Lauren got into a fight over a past fling Lauren had with another man.

¶8.    Casey noticed Lauren still had this man's number in her phone, hidden under a female friend's name. Lauren stormed off after Casey got angry and tried to call this man.

¶9.    As she was leaving, Lauren phoned another guy, Brian Rauch, and asked if she could come over. Lauren's drive to Rauch's house took a while because Casey pursued her, blocking her several times to try to get her to pull over. She finally drove past Casey and made it to Rauch's house. But an hour or so later, Casey showed up at Rauch's house and banged on the door. Rauch opened the door as Casey was leaving. And Casey yelled an obscenity at him, then drove off.

¶10.    Around midnight, Lauren told Rauch she was going home. But instead of going home, she went back to Casey's. Lauren testified Casey had called her after he left Rauch's. He said he had been in a wreck. So Lauren drove around trying to find Casey. Unable to locate him, she kept calling his phone. Finally, Casey's friend called her from Casey's phone and told her Casey was okay. She then drove back to Casey's house around 1 a.m. and waited for him to return home.

¶11.    When Casey arrived around 1:30 a.m., he was in an ill humor. This is when the assault began. Once both were inside the house, Casey punched Lauren in the head. He then kneed her in the face. And he snatched her phone, threw it on the ground, and kicked it under some furniture. At this point, he made her undress and carried her outside,[2] where he dropped her, kicked her, and slammed her head on the hood of her car. Casey then took her

---

[2] At the time of the assault, Casey only weighed between 80 and 85 pounds.

behind the house to his dog's crate, where he locked her inside the cage for about twenty minutes.

¶12.    From the crate, Casey took Lauren inside to the bathtub.  Casey told Lauren she smelled like "sh- -" and sprayed her with Lysol, then hit her with the Lysol can.  After lifting her out of the tub, he covered her in a towel, and took her into the bedroom.  There he wrapped her in a chain and left her for another twenty minutes.  Lauren testified at this point she was struggling to breathe.  When Casey returned, he unchained her and dragged her to the kitchen.  He found a large piece of ceramic tile on the counter and smashed Lauren over the head with it, shattering it.

¶13.    Stunned, Lauren staggered back to the bedroom and sat on the floor.  Casey followed Lauren and handed her a gun.  He told her she had five minutes to kill him.  Otherwise, he was going to kill her.  When five minutes was up, Casey pointed the gun at Lauren's head and pulled the trigger twice.  It turned out the gun was unloaded.

¶14.    After hitting Lauren once more, Casey brought Lauren a bag of frozen chicken to help with the swelling on her face.  He then went to sleep.

¶15.    While Casey was asleep, Lauren eventually found her keys and clothes around 4:45 a.m.  She struggled to get dressed.  When she heard Casey's phone ring around 6 a.m., she left Casey's house and sped home to her parents.

   B. *Casey's Testimony*

¶16.    Casey testified in his defense.  According to him, the evening began very much as

Lauren said it had. She had come over at his invitation while his three friends were still there. And after they left, he and Lauren began fighting about the man with whom Lauren had cheated. But Casey denied going outside to try to call him. Instead, Casey said he went outside and punched his grill. This was why his hand was bruised and swollen the next day.

¶17. Casey admitted he went to Rauch's house when he figured out Lauren had headed there. But Casey testified Rauch told him he (Rauch) would "deal with her"—meaning Lauren—before telling Casey not to come to his house again.

¶18. Casey's account of what happened after he left Rauch's house vastly differed from Lauren's. According to Casey, Lauren had asked if she could come back to his house. He initially said yes. But after going to his friend's house and venting about Lauren, he called her on the way home and told her not to come over. Casey made it back home around 1 a.m. He did not see Lauren again until his arraignment a week later.

¶19. When questioned about the broken tile on his kitchen floor, Casey explained that when he moved in months earlier, several loose ceramic tiles had been left in the house. Casey had been using them as cutting boards. Two days before the alleged attack, he had stubbed his toe, causing him to drop one of the tiles. But earlier in his testimony, he had said he spent the afternoon before Lauren arrived cleaning his house and doing chores. And he was cross-examined about why he had not, as part of his house cleaning, picked up the broken tile pieces—especially when the photos from the search showed the rest of his house was, for the most part, tidy.

¶20. He also testified the pistol officers found on the floor beside his bed had been in the drawer when he left his house, suggesting it must have been moved.

¶21. Casey denied owning a chain, especially one like Lauren described. But he admitted on cross-examination that as a mechanic he often used chains to lift and move engines. And he had driven his service truck to work the morning after the alleged attack.

### C. Other Testimony

¶22. Both the deputy and investigator testified. During their testimony, the State introduced photographs of Lauren, taken when she arrived at the hospital. They showed her swollen face and bruised ear. They also showed yellow marks on her legs, consistent with a rusty chain. The State also introduced photos of Casey's house, taken the afternoon after the attack. These photos showed the pistol on the floor next to Casey's bed and the dog crate in the back yard. They also showed the broken tile on the kitchen floor. But no chain was found inside or outside of Casey's house.

¶23. Casey's grill was also photographed. According to one officer, he saw no signs the grill had been punched. While officers testified about signs of a struggle in the bedroom—namely, pillows flung off the bed—they also admitted finding half-full beer bottles on the bedside table, which had not been knocked over.

¶24. One of Casey's friends, Brandon Robinson, also testified. Robinson had been over at Casey's house that afternoon, helping Casey with chores. He corroborated that Lauren had come over that afternoon. But he left before Lauren and Casey got into a fight. Robinson

7

testified he had driven past Casey's house at 1:30 a.m.—the time Lauren said the attack began—and did not see Lauren's car parked outside.

### III.    Conviction and Sentence

¶25.    After considering all evidence, the jury found Casey guilty of aggravated assault. The judge sentenced Casey to fifteen years' imprisonment, with five years suspended and ten years to serve, followed by five years' postrelease supervision. *See* Miss. Code Ann. § 97-3-7(2)(a) (twenty-year maximum sentence for aggravated assault). Casey was credited the time he spent in county jail awaiting his second trial.

## Discussion

¶26.    On appeal, Casey launches two attacks against the evidence. First, he argues evidence used in his first trial to support the kidnapping charge was inadmissable in his second trial. Second, he claims the evidence in his second trial was insufficient to convict him of aggravated assault. We approach both issues with deference to the decisions made below.

### I.    Admission of Evidence

¶27.    The decision that evidence from the first trial was also admissible in the second trial fell within the sound discretion of the trial judge. *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (acknowledging the "great deal of discretion" that a trial judge enjoys "as to the relevancy and admissibility of evidence"). So we will only reverse his ruling if he abused that discretion in a way that prejudiced Casey. *Id.* And here we find no abuse of discretion.

### A.    Trial Judge's Ruling

¶28. At the beginning of the second trial, before jury selection, Casey's counsel raised the issue of the sexual-battery and kidnapping charges. Counsel asked "how far will the court allow the [State] to go into that, because he's not on trial for that? And then that's kind of prejudicial to him to bring that up when he's already been found not guilty." The State argued the evidence from first trial was relevant to the assault, being "part of a common scheme that happened over a short period of time[.]"

¶29. In response, the trial judge found the evidence could only come in if it passed the "403 balancing test." Mississippi Rule of Evidence 403 permits exclusion of relevant evidence where the risks of undue prejudice substantially outweighs the evidence's probative value. M.R.E. 403; *Simmons v. State*, 813 So. 2d 710, 716 (¶33) (Miss. 2002). Here, the judge found any evidence of sexual penetration[3] was "out" because it was more prejudicial than probative. But the court found the evidence that Casey restrained Lauren—first in a dog crate, then with a chain—was much more relevant to the assault charge and could come in so long as the State did not mention the kidnapping charge.

### B. Rule 404(b) and Rule 403

¶30. Casey disagrees with the judge admitting evidence he caged Lauren and chained Lauren. Much as his trial attorney did, Casey turns to his acquittal on the kidnapping charge, arguing the evidence should have been excluded. But "relevant and probative evidence that

---

[3] To support the sexual-battery charges, the State presented evidence in the first trial that Casey sexually penetrated Lauren three times that night—once with his hand, once with a beer bottle, and once with a sex toy. The jury found Casey not guilty of all three charges.

is otherwise admissible under the Rules of Evidence" is not automatically inadmissible "simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling v. United States*, 493 U.S. 342, 348 (1990).[4]

¶31. Under Rule 404(b) "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." M.R.E. 404(b). But there is a well-recognized exception to this rule, which Casey acknowledges. Evidence of other bad acts *is* admissible "when the charged offense and . . . bad act are so interrelated or form part of a series of occurrences." *Edwards v. State*, 124 So. 3d 105, 113 (¶35) (Miss. Ct. App. 2013) (citations omitted). Under Rule 404(b), evidence of other bad acts "may . . . be admissible for other purposes[.]" M.R.E. 404(b). And when acts are closely related, the State may introduce this evidence for the purpose of telling the jury the "complete story" of what happened. *Edwards*, 124 So. 3d at 113 (¶36) (quoting *Jenkins v. State*, 75 So. 3d 49, 53 (¶9) (Miss. Ct. App. 2011)). Still, before such evidence may come it, "it must pass through the 'ultimate filter' of . . . Rule 403." *Johnson v. State*, 44 So. 3d 1040, 1045 (¶19) (Miss. Ct. App. 2010) (quoting *Jenkins v. State*, 507 So. 2d 89, 93 (Miss. 1987)). Under Rule 403, relevant "evidence may be excluded if its probative value

---

[4] In *Dowling*, the defendant had objected to evidence relating to charges for which he had been acquitted on double-jeopardy and due-process grounds. *Dowling*, 493 U.S. at 347, 352. Here, Casey does not assert the admission of this evidence violated any constitutional right. So we focus on whether the admission of this evidence violated the Rules of Evidence.

10

is substantially outweighed by the danger of unfair prejudice[.]" M.R.E. 403.[5]

¶32. The judge felt the evidence that Casey locked Lauren in a dog crate and bound her with a chain was not merely interrelated and part of the series of occurrences forming the assault—it was also relevant and probative to the assault itself. We find no abuse of discretion with that conclusion. To prove the severity of her injuries, the State introduced photographs of Lauren, taken soon after she was admitted to the hospital. Some of the photos showed yellow, rust-colored marks on her legs, consistent with being wrapped with a chain. So Lauren's testimony about the chain was relevant to how those marks got there. Lauren also testified that Casey hit her with a Lysol can. According to Lauren, Casey did this after releasing her from the crate, claiming she smelled bad. So evidence Casey caged her in a crate with dog feces was part of "the complete story" of the assault.

¶33. The trial judge also rightly acknowledged that, before admitting this relevant evidence, its probative value had to be weighed against its potential prejudice. Casey suggests the judge failed to follow through with an actual balancing test. As he sees it, the judge declared the sexual-penetration evidence "more prejudicial than probative," yet the judge never found the kidnapping evidence "more probative than prejudicial." But the record quickly dispels this suggestion. The judge was explicit that the evidence would only come in if it passed the Rule 403 balancing test. So by ruling the evidence was admissible, the

---

[5] Relevant evidence may also "be excluded if its probative value is substantially outweighed by . . . confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.

judge clearly found the evidence "passed the test." No further "magic words" were required. *Pitchford v. State*, 45 So. 3d 216, 246 (¶128) (Miss. 2010) (emphasizing that trial judges need not use the "magic words" about the probative value of the evidence outweighing any prejudicial effect when making a Rule 403 determination).

¶34.    Casey alternatively argues the judge's decision—that unfair prejudice did not outweigh the probative value—was an abuse of discretion. Casey asserts his prior acquittal made this evidence so prejudicial it required exclusion. But the only cases he cites in support involved using evidence of prior crimes, for which the defendant had been acquitted, to *impeach* the defendant on cross-examination. *E.g.*, *McFarland v. State*, 735 So. 2d 1007, 1010 (¶12) (Miss. 1999) ("find[ing] that reversible error was committed by the trial court in allowing the district attorney to offer impeachment evidence regarding a previous charge for which McFarland had been acquitted"). However, Casey's case is different since the complained of evidence was admitted as substantive evidence to prove aggravated assault, not simply as impeachment evidence to challenge Casey's credibility. Moreover, these events occurred at the same time as part of the series of events that formed the assault, making this evidence far more probative than in *McFarland*. *Cf. id.* (finding evidence of previous charges, entirely separate from charge being tried, was more prejudicial than probative).

¶35.    Ultimately, it was the trial judge's call whether the probative value was substantially outweighed by the risk of unfair prejudice. *See Batiste v. State*, 121 So. 3d 808, 863 (¶143)

12

(Miss. 2013) ("The trial court has broad discretion under Rule 403."). And given our deferential standard of review, we cannot say the judge abused his discretion.

## II. *Sufficiency of the Evidence*

¶36. Casey also challenges the State's evidence as insufficient to support his conviction of aggravated assault.

¶37. When considering the sufficiency of evidence, we view all evidence in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). This means we "give the State the benefit of all favorable inferences reasonably drawn from the evidence." *Grossley v. State*, 127 So. 3d 1143, 1147 (¶10) (Miss. Ct. App. 2013) (citing *Jones v. State*, 20 So. 3d 57, 64 (¶16) (Miss. Ct. App. 2009)). Viewing the evidence in this manner, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (¶16) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶38. To find Casey guilty of aggravated assault, the jury had to find beyond a reasonable doubt Casey caused serious bodily injury to Lauren purposefully, knowingly, or recklessly "under circumstances manifesting extreme indifference to the value of human life." Miss. Code Ann. § 97-3-7(2)(a).[6] Casey concedes the evidence undisputedly proved Lauren suffered serious bodily injury. And he does not claim a lack of evidence that her injuries

---

[6] At the time Lauren was assaulted, section 97-3-7 listed the elements of aggravated assault under a different subsection. While the subsection numbers have since changed, the substance of this crime has remained the same.

13

were caused purposefully, knowingly, or with a reckless indifference to Lauren's life. What he instead argues is that the evidence was insufficient to prove *he* was the person who injured Lauren.

¶39. We find this was a classic jury question. Lauren unequivocally identified Casey as her assailant, both initially to law enforcement and at trial. Viewing her testimony in the light most favorable to the State, it was more than sufficient to prove beyond a reasonable doubt Casey was the one who caused Lauren's injuries.

¶40. On appeal, Casey asks this court to reject Lauren's testimony. He wants us to deem it not credible and view it unfavorably compared to his testimony and other evidence. But when reviewing the sufficiency of the evidence, our role is not to play the skeptic. Instead, we must "consider[] the evidence in the light most favorable to the [S]tate" and give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Hughes v. State*, 983 So. 2d 270, 276 (¶11) (Miss. 2008) (citing *Bush*, 895 So. 2d at 843 (¶16); *Wilson v. State*, 936 So. 2d 357, 363 (¶16) (Miss. 2006)).

¶41. The role of determining Lauren's and Casey's credibility as witnesses and weighing any conflicting evidence belonged to the jury. *See Davis v. State*, 130 So. 3d 1141, 1150 (¶37) (Miss. Ct. App. 2013) (citations omitted). And even when "a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence

14

will be deemed to have been sufficient." *Bush*, 895 So. 2d at 843 (¶16) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). Only when a reasonable juror could not possibly have found the defendant guilty based on the evidence will we reverse on sufficiency grounds. *Davis*, 130 So. 3d at 1150 (¶37).

¶42. While reasonable jurors may have reached different conclusions about whether Casey caused Lauren's injuries, it was certainly possible—based on Lauren's testimony, the officers' testimony, and the photographic evidence—for a reasonable juror to find Casey guilty of aggravated assault beyond a reasonable doubt. For this reason, we must affirm.

¶43. **THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND TEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**